### J. H. GIBSON v. LANCASTER BROS.

#### Decided April 5, 1897.

1. Sale—Fraud—Rescission—Returning Purchase Money.

A car load of lumber, fraudulently ordered by an insolvent person in the name of and shipped to a fictitious corporation, was received at its destination by the purchaser, he paying the freight, and, without paying more, was sold by him to one having notice of facts which taxed him with knowledge of the fraud. By the contract the purchaser was to pay freight at destination and receive credit therefor on the agreed price. In a suit by the seller to rescind the contract for fraud and recover the lumber, held that the plaintiff was required to tender a return of the freight paid. (Pp. 541, 542.)

2. Same—Cases Discussed.

Chamberlin v. Fuller, 59 Vt., 247, and Guckenheimer v. Angevine, 81 N. Y., 394, distinguished; and Parks v. Lancaster, 38 S. W. Rep., 262, approved. (P. 543.)

QUESTIONS CERTIFIED from Court of Civil Appeals, Fourth District, in an appeal from County Court, Dallas County.

*Edwin O. Harrell,* for appellant.—The sale of personal property, procured and induced by the purchaser fraudulently or with intent not to pay for the same, cannot be rescinded by the seller, upon discovering the fraud, where part of the purchase money has been paid or the contract partly performed, unless he restores to the purchaser the purchase money so paid, or offers to do so, and thus place the purchaser in the condition he was in before the sale, and make him whole. The payment of the $126.22 to the Texas & Pacific Ry. Co. was a payment under the contract of sale, and was a payment of the purchase money to that extent, and Lancaster Bros., not having paid or tendered it back, did not have title to the lumber in controversy, and could not recover the lumber in this suit. Parks v. Lancaster, 38 S. W. Rep., 262; Teague v. Williams, 25 S. W. Rep., 1048; Thomas v. Beaton, 25 Texas Sup., 322; Templeton v. Green, 25 S. W. Rep., 1073; Hunt v. Turner, 9 Texas, 386; Vandervelden v. Railway, 61 Fed. Rep., 54; Benj. on Sales, secs. 504, 530 and 549, note 14; Kinney v. Kiernan, 49 N. Y., 165; Herman on Estoppel, secs. 1043, 1044 1052 1056; Clay v. Cook, 16 Texas, 70; Ledyard v. Brown, 27 Texas, 393; Pearson v. Cox, 71 Texas, 246; Allyn v. Willis, 65 Texas, 73; 8 Am. & Eng. Encycl., Law, 801.

*McCormick & Spence* and *Edwd. M. Browder,* for appellees.—The defrauded vendor does not lose his right to rescind the contract of sale because the buyer has incurred expenses in respect to the property, so fraudulently purchased, in carrying out the fraudulent designs of the latter, nor is it necessary that such defrauded seller shall make good

such expenses to such purchaser, even though the seller received an advantage from such expenses in the rescission and by retaking the property. The sale of personal property procured and induced by fraud can be rescinded by the defrauded seller without reimbursing such purchaser for any advances and expenditures that may have been made by the latter to effectuate his fraud, although such defrauded seller may derive benefit from such advances upon the retaking of his property. A defrauded vendor of personal property can rescind the contract of sale and retake his property without reimbursing the purchaser (who procured the delivery of said property by fraud) for the money which the latter has paid as freights for its transportation, and to get possession thereof. No cause of action can arise out of fraud. When a purchaser procures the delivery of goods on a credit by fraudulently representing to the vendor that the firm is engaged in a prosperous manufacturing business, and that he will pay cash for goods ordered, on delivery, but with no intention of paying therefor, he being wholly insolvent, the vendor, upon discovering such fraud, may rescind sale and retake his property without accounting to such purchaser for any moneys paid out by him in the development of his fraudulent scheme, and for the purpose of getting possession of the goods, thereby effectuating his fraud. Broom's Legal Maxims, 702; Chamberlain v. Fuller, 9 Atl. Rep., 832, 59 Vt., 247; Guckenheimer v. Angevine, 81 N. Y., 394; Kley v. Healy, 127 N. Y., 561.

GAINES, CHIEF JUSTICE.—The following question has been certified for our determination by the Court of Civil Appeals for the Fourth Supreme Judicial District:

"In April, 1894, H. C. Travers, in the name of the Texas Box & Crate Factory, ordered a carload of lumber from Lancaster Bros., to be shipped from Marshall to Dallas, Texas, and delivered there free on board of cars to said Texas Box and Crate Factory at $12.50 per thousand feet. There was no such concern as the Texas Box & Crate Factory in existence, and such name was used by Travers, who was insolvent, in making the order above stated, for the fraudulent purpose of obtaining possession of the lumber without paying for it. Lancaster Bros., under the belief that the order had been made by a solvent corporation of the name used, and without knowledge of Travers' insolvency, or of his connection with the matter, shipped the lumber in response to the order. When it arrived in Dallas it was, by the railroad company over whose road it was shipped, on the order of Travers, made in the name of the Texas Box & Crate Factory, delivered to one O. F. Parks, who claimed that he purchased it from the consignee, Travers or Parks paying the railroad company the freight, which, for convenience, it was understood when the lumber was ordered should be paid by the consignee and credited on the bill as part of the purchase money. After Parks obtained possession of the lumber he sold it to J. H. Gibson. If Parks bought the lumber, as claimed, it was with full knowledge of the facts consti-

tuting its fraudulent procurement by his vendor from its owners. When Gibson obtained the lumber from Parks, though he may have paid value for it, he either knew of the fraudulent means by which it had been obtained or was in possession of such facts as would put an ordinary prudent man upon inquiry which, if pursued, would lead to knowledge of the fact of such fraudulent intention. Upon learning of the fraud practiced upon them, Lancaster Bros. brought suit, without tendering the money paid for the freight, against Travers and Parks for a rescission of the contract under which their property was obtained, and to recover its possession. It was seized by virtue of a writ of sequestration issued in the case, and Gibson filed his claimant's affidavit and bond for the trial of the right of property.

QUESTION: "Did the payment of the freight due the railroad on the lumber, under the circumstances mentioned, preclude Lancaster Brothers from rescinding the contract, and recovering their property?"

We understand one of "the circumstances mentioned" in the statement accompanying the question to be the fact that suit was brought without tendering the money paid for the freight, and infer that the point submitted for our decision is, whether or not the suit for a recovery of the lumber was properly brought without first making the tender. This is the question discussed in the briefs of counsel filed in the Court of Civil Appeals, and sent up with the certificate, and the one argued orally by counsel for the appellant in this court.

These principles are elementary: 1. That a sale procured by fraud is not void, but merely voidable at the election of the party defrauded; 2. That in order to recover property sold under a contract procured by fraudulent representations made by the purchaser to the seller, the latter must rescind that contract; and, 3. That if any part of the purchase price has been paid, in order to a rescission, the money so paid must be tendered by the seller to the purchaser. (Bigelow on Fraud, 75.)

In this case a fixed price for the lumber, free on board the cars, was to be paid at Dallas, the place of delivery; and, under the terms of the contract, the purchaser was to advance the freight at that point, and to receive credit therefor upon the account. We are unable to distinguish it from a case in which, upon the arrival of the lumber, the seller had demanded of the purchaser a sufficient sum to pay the freight, and had received and so applied it. The purchaser was not a mere volunteer in making the payment, but acted in privity with the seller, and in pursuance of his contract. Presumably the lumber was worth more at the place of delivery than at the point of shipment, and payment of the freight, made by the purchaser as he had contracted to do, brought about that enhancement in value. If he had not paid it, the seller would have been compelled to do so in order to retake his property upon a recisssion of the contract. Hence he can with no more justice retain the benefit of the money so paid without refunding it, than he could have retained a payment made upon the lumber at the very time the sale was made.

There is a broad distinction between this case and that of Chamberlin v. Fuller, 59 Vt., 247. There the goods were bought of the plaintiffs in Boston, delivered there to the purchaser, and shipped by the latter to Groton, in Vermont. When sued to recover the property on the ground of fraud in the contract the defendant, the assignee in insolvency of the purchaser, urged that the plaintiffs "were under obligation to reimburse the insolvent for the money which he paid as freight on the goods to Groton." It was held, and properly held, as we think, that such was not the law. It does not appear directly that the goods were enhanced in value by their transportation. But if so, the plaintiff was not chargeable for it. The purchaser having obtained them by fraudulent pretences, he could not fix a charge upon them against the party defrauded by his voluntary act. His contract with the sellers did not bind him to ship to Groton, or to pay the freight.

This case, too, is essentially different from that of Guckenheimer v. Angevine, 81 N. Y., 394.. There certain whisky, in bond in a United States bonded warehouse, was sold under a contract which was rescinded for fraud in the purchaser. A second purchaser, who was the defendant in the suit, paid the tax, but the court found that he was privy to the original fraud, and made the payment in order to consummate the fraudulent scheme. The payment was voluntary, and although the tax was a lien upon the whisky when it was paid, it was held that the defendant was not entitled to be reimbursed for the money so paid.

In this case the freight was paid in pursuance of the original contract, and the money so paid was a part of the purchase price, and was in accordance with the contract to be credited on the account. It was money paid at the request and for the benefit of the seller, and was a partial payment for the lumber. Under the law, in order to rescind the sale, it was necessary that it should be refunded. The opinion in Parks v. Lancaster (38 S. W., 262), delivered by the Court of Civil Appeals at Dallas, is in accord with these views, and that case was, as we think, correctly decided. It evidently grew out of the same transaction as this case, and involved the same point.

For the reasons given, we answer the question in the affirmative.