## STATE v. MAGNOLIA PETROLEUM CO.

### No. 11308.

Court of Civil Appeals of Texas.
San Antonio.

June 23, 1943.

Rehearing Denied July 21, 1943.

Gerald C. Mann, Atty. Gen., and Cecil C. Rotsch, Peter Maniscalco, E. P. Price, and Chester Ollison, Asst. Attys. Gen., for appellant.

Wallace Hawkins, Earl A. Brown, and R. T. Wilkinson, Jr., all of Dallas, for appellee.

MURRAY, Justice.

This suit was instituted by appellee, Magnolia Petroleum Company, a corporation, in trespass to try title against L. W. Stieren for the title and possession of all the oil, gas and other minerals in and under 480 acres of public free school land, which land had been previously sold by the State to Stieren's lessor bearing a mineral classification.

The State of Texas intervened, by and through its Attorney General, and asserted its claim to the oil, gas and other minerals in and under such land as a part of the free school fund of Texas. It also requested the court to set aside and cancel, as clouds upon its title, two certain instruments under which Magnolia Petroleum Company claimed title to the oil, gas and other minerals in and under such land, to-wit:

(1) A certain mineral or royalty deed dated May 10, 1923, whereby F. E. Pryor, the then owner of the surface estate in such land, purported to convey the State's mineral estate in and under such land to the Trustees of the Magnolia Petroleum Company.

(2) A certain assignment of the interest acquired by such Trustees under the said mineral or royalty deed to Magnolia Petroleum Company, a corporation, dated April 19, 1926.

The Magnolia Petroleum Company answered the State's intervention by general denial, a plea of not guilty, and alleged title as against the State by cross-action in trespass to try title. The State answered the Magnolia's cross-action by a plea of not guilty.

Stieren, the original defendant, filed a disclaimer in the trial court, and the State and the Magnolia Company submitted the case to the court, without the intervention of a jury, upon an agreed case, under Rule 263, Texas Rules of Civil Procedure.

The trial court rendered judgment that the Magnolia Petroleum Company recover of and from the State of Texas and L. W. Stieren, "title and possession of, according to the terms and provisions of that certain instrument dated May 10, 1923, executed by F. E. Pryor and wife, Pearl Pryor, to John Sealy, E. R. Brown, R. Waverley Smith, E. E. Plumly and W. C. Proctor, as Trustee of the Magnolia Petroleum Company, such instrument being of record in Volume 87, page 242, Deed Records of Webb County, Texas, and according to the provisions of the Relinquishment Statutes of the State of Texas, the oil, gas and minerals in and under the following described acreage in Webb County, Texas, to-wit:

"Four Hundred and eighty (480) acres situated in Webb County, Texas, and is a part of Section 264, Certificate 3699, G. C. & S. F. Ry. Co., Block 2, * * *."

From this judgment the State has prosecuted this appeal.

The State, appellant herein, contends that under the agreed statement of facts it was entitled to judgment cancelling the mineral deed and the assignment thereof to the Magnolia Petroleum Company, appellee herein, and, further, to judgment awarding to it the title and possession of the oil, gas and other minerals in and under the 480 acres involved.

The real question herein is whether or not F. E. Pryor and his wife, Pearl Pryor, as owners of the surface rights of the 480 acres could properly execute a mineral deed conveying 15/16ths of the oil, gas and other minerals in and under the land to the Magnolia Petroleum Company, which would effectively convey all or any part of such minerals to such Company in fee simple.

It is apparent from the wording of the judgment that the trial court intended to write into the mineral deed all the mandatory provisions of the "Relinquishment Act," Articles 5367–5382, inclusive, R.C.S. 1925, Vernon's Ann.Civ.St. arts. 5367–5382, and allow appellee to recover such interest in the oil, gas and minerals in and under the 480 acres as would be proper under the mineral deed as thus added to and amended, but does not attempt to set forth what interest this would be. It is also apparent that the trial court intended to require the appellee to pay to the State such bonuses, rentals and royalties as would be required of it under the "Relinquishment Act," but again the trial court does not set out in detail the amount of such bonuses, rentals and royalties.

It is further apparent that Pryor and wife believed they were the absolute owners of 15/16ths of the oil, gas and other minerals in and under this 480 acres, and that they intended to convey this interest to appellee in fee simple for the cash consideration recited in the deed. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655, holding to the contrary, was not handed down until some five years thereafter.

There was already an oil and gas lease on the land held by appellee and it did not need another lease on the same land. The mineral deed had for its purpose the conveying to appellee of all the oil, gas and other minerals that Pryor and his wife had in the 480 acres, and such interest is clearly stated to be a 15/16ths interest.

Appellee, in effect, asks this Court to re-write the mineral deed and place in it such provisions as should have been placed therein originally to make it conform to the Relinquishment Act, supra.

Let us see what this would require. It would first call for a provision to the effect that the instrument was executed for and in behalf of the State of Texas, and that the Pryors were merely acting as agents. Second, that the State was retaining not a 1/16th mineral interest but a 1/16th royalty. Third, that only the gas and oil was sold and not the other minerals. Fourth, that until production was begun the grantee should pay to the State a rental of some amount not less than 10¢ per acre per annum. There should also be a provision that failure to pay the rental when due would terminate the lease. It is perfectly obvious that this Court cannot write all these provisions into the mineral deed. It would be to set aside the contract actually made by the parties and for the Court to write quite a different and new contract.

■ The proper construction of the Relinquishment Act, supra, was before the Supreme Court in Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655, 659. This decision was written in 1928, some five years after the mineral deed herein had been executed. Since that decision the law has been settled that the Relinquishment Act does not vest any interest or title in the oil and gas in and under mineral-reserved school lands in the owner of the surface estate, but merely makes him the agent of the State for the purpose of leasing such land for oil and gas. If the Supreme Court had held that the Act vested 15/16ths of the minerals in the surface owners, then and in such event the effect of the Act would have been to donate a part of the school lands to private persons which would have been unconstitutional.

In the Greene-Robison case the purpose of the Relinquishment Act is fully discussed; we quote:

"Therefore the very first words of this Mineral Act of 1919 disclosed that one of the purposes of the act was 'to promote the active co-operation of the owner of the soil.' This calls attention to the conditions that made it desirable to secure the cooperation of the owner of the soil. The state had sold the land, the soil with all that goes with it, to the purchaser thereof, and was under obligation to protect him in the use and enjoyment of what it had sold him; and this the state had failed to do.

"There was a dual or double ownership of the land, the surface estate and the mineral estate, each antagonistic to and conflicting with the other. There was no provision of law for the protection of the owner of the soil in his peaceable enjoyment and possession of his property. The development of an oil field on it would be disastrous to him and utterly destructive of his property. Therefore the attitude of owners of the school and asylum lands throughout the state was practically one of armed resistance. The conditions were inimical to any effort at development, and the state was not realizing on its mineral estate in these lands. The purpose of the act was to meet this practical situation. Indeed, the rights of possession and user of the land as a whole by both the owner of the soil and the owner of the minerals, they being joint owners of the land, are mutual and blended. As in other joint ownerships, necessarily there must be cooperation. If the joint owners do not cooperate, confusion is bound to arise, the purposes and efforts of each are jeopardized and destroyed, and the state suffers loss, not only to its mineral estate, but likewise as a sovereign in the administration of justice. The Legislature has brought about this desired result in a lawful manner by requiring the purchaser of the oil and gas to compensate the owner of the soil for the use he makes of the surface, independent of the price he pays for the minerals. He compensates said owner for the inevitable damages of oil exploration and operation. The landowner acquires no estate in the oil and gas. He simply has a right to receive the compensation from the lessee out of the lessee's production as the statute provides."

It could in no way accomplish the declared purpose of the Act if the owner of the surface was simply granted 15/16ths of the minerals and in turn was at liberty to convey this interest to some third person. Thus you would have no mineral interest vested in the surface owner, the very condition intended to be remedied.

■ The Act provides that in every case the State is entitled to a rental of not less than ten cents per acre per year and a 1/16th royalty. It is the duty of the surface owner to secure the highest rental possible, but he may not lease for less than

ten cents per acre per annum. Again in Greene v. Robison, supra, it is stated: "We interpret the act to fix a minimum price of 10 cents per acre per annum and the value of one-sixteenth of the gross production free of cost to the state, for which the state is willing to sell the oil and gas, and the agent is authorized to secure the highest price obtainable for the benefit of the fund to which the land belongs * * *."

We know of no other rental in an oil lease than delay rentals, this requires a primary term in the lease during which rent may be paid for the privilege of delaying development.

Appellees contend that the provisions of the Relinquishment Act should be written into the mineral deed, and as thus amended it should be declared to be valid. If we write a rental into the deed, what price shall we put thereon? This is a matter upon which the parties have not agreed. The State wants more than ten cents per acre if it can get it, while the appellee certainly doesn't want to pay more than ten cents if it can be avoided. This is a matter which Pryor should have negotiated but did not. This court cannot make an agreement for the parties. There has been no meeting of the minds upon this point. This presents a matter which is not met by merely writing the Relinquishment Act into the deed.

Pryor attempted to convey not only the oil and gas but all other minerals. Whatever rights Pryor may have had, by the terms of the Act, they are confined to the oil and gas and in nowise relate to the other minerals. Art. 5376, supra.

Pryor and wife exceeded their authority as agents of the State in executing a mineral deed which failed in many ways to carry out the provisions of the "Relinquishment Act" under which they were presumed to be proceeding. The State is not required to ratify or adopt the unauthorized acts of its supposed agents but may repudiate them as unauthorized and ask that they be set aside and held for naught. When the agent has exceeded his authority the opposite party is not entitled to have the contract enforced to the extent that the agent had authority to act. 2 Tex.Jur. 547, § 145; Evants v. Fuqua, 102 Tex. 430, 118 S.W. 132, 132 Am.St.Rep. 892; Connor v. Uvalde National Bank, Tex. Civ.App., 156 S.W. 1092; Morton v. Morris, 27 Tex.Civ.App. 262, 66 S.W. 94, 95.

We feel that when the entire Relinquishment Act is considered and especially in the light in which it has heretofore been construed, it was never intended that the surface owner should execute a deed absolute to the oil and gas in and under his land, but only an ordinary commercial lease, which provides for delay rentals unless and until oil is produced in paying quantities. The surface owner as agent of the State is to have an equal rental and royalty with the State as compensation for his services as such agent and for the damage done to the surface of the land when exploration for or production of oil is begun. When the lease terminates then all rights of the surface owner terminate, as he has no interest in the minerals except such as the lease gives him.

In Lemar v. Garner, 121 Tex. 502, 50 S. W.2d 769, 773, the Supreme Court said: "In our opinion, the act, when fairly and reasonably construed, also means that all minerals not disposed of go with the title of the land, subject to the provisions of the act. That when a valid and binding lease or conveyance of the minerals is made by the owner of the land, as the agent of the state, then in that event he receives the foregoing amounts as compensation for his services. His share of the rentals, royalties, and bonuses derived from the leases executed by him become property rights during the period of time for which the lease runs. Prior to the making of the mineral lease, the owner of the land has no right to assign or convey any mineral rights in the property. It is the intention of the law that the owner of the land shall be the agent of the state to execute mineral leases. Whenever a mineral lease executed by a prior owner terminates, the then owner of the land becomes the agent of the state with authority to sell or lease the oil and gas mineral rights, as provided for in the Relinquishment Act."

Appellee contends that the provisions of the Relinquishment Act should be read into any instrument that the surface owner might execute whether the same are incorporated into such instrument or not, citing Permian Oil Co. v. State, Tex.Civ. App., 161 S.W.2d 568; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265. This is undoubtedly the law, but the nature of those cases and the facts involved are so different from the case at bar as to be of no value here. The Permian case was a plea of privilege case, and the provisions

to be there supplied by a writing of the Relinquishment Act into the contract are so different from those to be here supplied that an entirely different matter is presented. In the Empire Gas & Fuel Company case neither party to the suit was attempting to have the lease or conveyance set aside but both parties were confirming the same.

The judgment of the trial court will be reversed and judgment here rendered that the mineral deed from Pryor and wife to the trustees and the assignment thereof to appellee be cancelled, set aside and held for naught, and that the State recover the title and possession to all the gas, oil or other minerals in and under the 480 acres of land above described.

Reversed and rendered.