TEXAS COMPANY V. THE STATE OF TEXAS
AND DUVAL COUNTY RANCH COMPANY

No. A-4724. Decided March 30, 1955.
Rehearing overruled July 13, 1955.
(281 S.W. 2d Series 83)

496

*William E. Loose*, of Houston, *Black & Stayton*, of Austin, and *A. W. Walker, Jr.*, of Dallas, for petitioner, Texas Company.

The Court of Civil Appeals erred in holding that the lease was invalid under the provisions of the Relinquishment Act, because it conveyed a determinable fee estate in the oil and gas, an estate may be conveyed by the owners of the soil as the State's agent. Stephens County v. Mid-Kansas Oil and Gas Company, 113 Texas, 160, 254 S.W. 290; Norman v. Giles, 148 Texas 21, 219 S.W. 2d 678; Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S.W. 2d 265.

*Jacob S. Floyd* and *E. G. Floyd, Jr.*, both of Alice, *Fouts, Amerman & Moore* and *Joseph W. Moore*, of Houston, for Duval County Ranch Company, petitioner.

*John Ben Shepperd*, Attorney General, *Phillip Robinson, Charles D. Mathews*, and *John Peace*, Assistants to the Attorney General, for respondent.

On the question of the validity of the lease, cited Greene v.

Robison, 117 Texas, 516, 8 S.W. 2d 658; Danciger Oil & Refining Co. v. Powell, 137 Texas 484, 154 S.W. 2d 632; W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S.W. 2d 27.

MR. JUSTICE CALVERT delivered the opinion of the Court.

The parties to this suit are The State of Texas, The Texas Company, and Duval County Ranch Company. They will be referred to as The State, Texas Company, and Duval.

The instruments out of which this controversy grew were executed by Duval, as grantor, to R. E. Breeding, as grantee, on May 23, 1922, and by Breeding to Texas Company on May 25, 1922. Both instruments conveyed a mineral estate in 16,000 acres of land, 12,000 privately owned in fee and 4,000 in which the minerals were owned by the Public Free School Fund. The instruments were identical except in unimportant particulars. Since it is admitted that Breeding was acting as agent of Texas Company in the transaction we need notice only the material provisions of the Duval-Breeding instrument. It reads:

"The State of Texas
County of Harris

"Know All Men By These Presents:

"That the Duval County Ranch Company * * * acting herein for itself and as agent and representative of the State of Texas, as provided in Article 5904o-16 et seq., of the Complete Texas Statutes of 1920, * * * for and in consideration of the sum of Twenty-eight Thousand and No/100 ($28,000) Dollars cash in hand paid by R. E. Breeding * * * hereby Grants, Bargains, Sells and Conveys, and by these presents does Grant, Sell, Bargain and Convey unto the said R. E. Breeding * * * all the oil, gas and other mineral (whether similar or dissimilar) in and under the following described tracts of land, * * *:

"The following tracts are included in this instrument: (here follows a description of the 16,000 acres of land).

"And the Grantee shall have the exclusive right to prospect, drill and mine on said land and remove said products therefrom; * * *.

"In the event the Grantee shall produce oil or gas or any other minerals from said tracts of land in paying quantities, then there shall be paid to Grantor, its successors and assigns, a royalty of one-eighth (1/8) of all the oil, gas and other minerals so produced and saved, except as to sulphur the royalty shall be

fifty cents (50¢) per ton for each ton mined and marketed. Any royalties due the State hereunder shall be deducted from grantor's royalties.

* * * *

"It shall be optional with the Grantee to drill or mine or carry on other operations on said tracts of land, or to refrain from doing so wholly or partially at any or all times, both before and after production; it being expressly agreed by the Grantor that the down cash payment recited in this instrument, receipt of which is hereby acknowledge, to Grantor is adequate to compensate and does compensate the Grantor for this right and privilege of Grantee.

* * * *

"If the estate of either party hereto be assigned the covenants hereof shall extend to the assigns and successive assigns; * * *.

"To Have and To Hold the above described oil, gas and other minerals, and the rights herein granted, all and singular, unto said grantee, his heirs and assigns forever; and the Grantor hereby binds itself its successors and assigns, to warrant and forever defend the same unto said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"It is expressly understood and agreed that this instrument is to be construed as a conveyance in fee of all the oil, gas and other minerals in and under the above described tracts of land.[1]

* * * *."

Texas Company first obtained production of oil and gas from the public school lands described in the instrument in 1934, and from that date until December 31, 1951, according to an agreed accounting based on Texas Company records, had received gross proceeds from the sale of oil and gas from such lands in the sum of $2,760,467.61. Total expenditures by Texas Company including production costs of $1,740,684.79, a 1/16th royalty of $172,400.50 paid to The State, a net royalty of $162,225.95 paid to Duval and certain bonuses and rentals paid, amounted to $2,093,679.86, leaving a net balance of $666,787.75.

The State sued Texas Company and Duval for title to and possession of the minerals in the four thousand acres of public school land, for cancellation of the mineral conveyances to Breeding and to Texas Company and for recovery of the value

---

1.—Except for the description of the land the full context of the instrument is set out in the opinion of the Court of Civil Appeals. See 267 S.W. 2d 458-459.

of all oil and gas that had been produced and sold from the land, less certain payments theretofore made. Texas Company defended the validity of the conveyances, pleaded its good faith development of the property, and by cross-action sought a recovery against Duval for breach of warranty. Duval prayed that it be allowed to retain the 1/16th royalty paid to it by Texas Company, and defended against Texas Company's cross-action.

In a non-jury trial, judgment was entered holding void and cancelling the conveyances to Breeding and Texas Company and vesting title to and right of possession in the minerals in The State, subject to the right of Duval to continue to receive 1/16th of production as damages to its surface estate and subject to Duval's right to continue as agent of The State in executing future leases, awarding The State a recovery against Texas Company of $666,787.75; decreeing to Texas Company a recovery against Duval of $9,940.00, representing Duval's one-half of the amount of the cash consideration paid for the conveyance by Texas Company, plus interest, but denying it a recovery of the proceeds of the 1/16th royalty paid Duval, and decreeing that The State should not recover but Duval should retain the proceeds of the 1/16th royalty paid it by Texas Company as damages to its surface estate. The State's motion for recovery from Texas Company of interest on the $666,787.75 in the sum of $278,073.48 was denied. Pursuant to request therefor the trial judge filed findings of fact and conclusions of law. All parties appealed.

The Court of Civil Appeals at San Antonio affirmed the judgment in so far as it cancelled the conveyances and awarded The State a recovery of title to and possession of the mineral estate and a recovery against Texas Company of $666,787.75, and in so far as it awarded Texas Company a recovery of $9,940.00 against Duval. It reversed the judgment in so far as it denied The State a recovery of interest, before judgment, and rendered judgment therefor against Texas Company in the sum of $278,-073.48. It reversed the judgment also in so far as it allowed Duval to retain the proceeds of the 1/16th royalty as damages to its surface estate, severing and remanding this phase of the case for trial to ascertain the actual damages to the surface, not to exceed the value of the 1/16th royalty, such damages, if less than the value of the 1/16th, to be offset against recovery by The State of such 1/16th theretofore paid to and retained by Duval. Chief Justice Murray dissented from this last phase of the judgment. 267 S.W. 2d 456.

The position of The State is that the instruments are invalid because they effected a conveyance by deed of an estate in fee simple absolute in the minerals in lands owned by the Public Free School Fund rather than a conveyance by an "ordinary" oil and gas lease of a determinable fee estate as authorized by the Relinquishment Act. The position of Texas Company is that the court is required to read the provisions and requirements of the Relinquishment Act (Acts 36th Leg., 2nd C.S., ch. 81, p. 249; Arts 5367, et seq., V.A.C.S. 1925) into the instrument, and, when read in, the estate conveyed is not a fee simple absolute but a determinable fee.

■ In determining the validity of the instruments we cannot permit ourselves to be controlled by what appears to us at this hour to be the "equities" of the case. Inasmuch as the land involved was unproven or "wild-cat" territory at the time the instruments were executed, we may assume, without doing violence to the record before us, that The State has received substantially the same amount of money it would have received if the instruments had been in the form of an "ordinary" oil and gas lease,[2] and that a recovery of the value of all oil and gas produced, less the cost of production, may well be in the nature of a "windfall" for the State. On the other hand, the record clearly reflects that Texas Company knew the instruments were of doubtful validity long before it entered upon development of the land but nevertheless rejected the substitution by Duval of a ten-year paid up lease, preferring to take a chance. Irrespective of the "equities" the instruments were either valid or invalid when they were executed and their validity must be adjudicated as of that time.

■ The instrument set out above has all the legal attributes of a deed conveying to the grantee an estate in fee simple absolute in the minerals. See cases cited in the opinion of the Court of Civil Appeals: 267 S.W. 2d 460. It is plain and unambiguous on its face. More than that, the parties made certain that, if ambiguous, courts would need search no further than the face of the instrument to find that the parties intended it to be a conveyance of an estate in fee simple absolute by declaring in the closing paragraph that it was expressly understood and agreed that it should be construed "to be a conveyance in fee of all the

---

2.—The State has received full payment of one-half of the cash consideration paid Duval on the state land, teñ cents per acre annual rental over the entire period and one-sixteenth of the value of the oil and gas produced from the land. There being no provision for "delay" rentals none have been paid.

oil, gas and other minerals." And if that expression left the slightest doubt as to the kind of "fee" that was conveyed—whether a fee simple absolute or a determinable fee—the doubt would be resolved by Article 1291, Revised Civil Statutes, 1925. Moreover, if the instrument itself left any doubt that the intention of the parties was to effect a conveyance of a fee simple absolute, that doubt was resolved by the trial court's finding from extrinsic evidence that the parties so intended. That the parties did so intend is not surprising when it is remembered that after the passage of the Relinquishment Act in 1919 and prior to the decision in Greene v. Robison, 117 Texas 516, 8 S.W. 2d 655, in 1928, the view was widely held that the Act operated to vest in the owner of the soil a fee simple title to 15/16ths of the minerals. See Walker, The Texas Relinquishment Act, First Annual Institute on Oil and Gas Law, Southwestern Legal Foundation, page 259.

We do not really understand Texas Company to contend that the instrument, unaided by a reading in of the Relinquishment Act, could be held to convey less than an estate in fee simple absolute, but it insists that that Act must be read in and that the instrument will then convey a determinable fee estate in the minerals meeting all the requirements of law necessary to its validity. The principal cases on which Texas Company relies to require a reading into the instrument of the Relinquishment Act provisions are Permian Oil Co. v. State, Texas Civ. App., 161 S.W. 2d 568; Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S.W. 2d 265; Globe Indemnity Co. v. Barnes, Com. App., 288 S.W. 121, and American Surety Co. v. Tarbutton, Texas Civ. App., 248 S.W. 435, writ refused.

Permian Oil Co. v. State involved only a venue question and did not reach this Court. There was no question of the validity of the instrument involved in Empire Gas & Fuel Co. v. State; the validity of the instrument as complying with the Relinquishment Act was assumed, and this Court held that in the absence of a provision fixing the place of payment it would be held that the parties to the lease contracted with reference to the stautory requirement for payment at Austin of that which was due the State. That holding is no authority for saying that provisions of the Act will be read into an instrument to change what was, and was intended by the parties to be, an absolute fee simple into some other kind of estate. The contrary was directly held in State v. Magnolia Petroleum Co., Texas Civ. App., 173 S.W. 2d 186, in which this Court, with the issue squarely before it, refused a writ of error for want of merit. We cannot apply the

law in one form to Magnolia and in a different form to Texas Company. It is not a material or controlling distinction that the instrument here was executed by Duval "for itself and as agent and representative of the State of Texas, as provided in Article 5904o-16 et seq., of the Complete Texas Statutes of 1920" (the Relinquishment Act), and there was no such recitation in the instrument involved in State v. Magnolia.

Globe Indemnity Co. v. Barnes involved the right of a surety on a performance bond of one contracting for the construction of a public building to limit its liability by providing therein that no right of action thereon should accrue to any person other than the obligee. The court held that the giving of a bond, conditioned as required by statute (Article 5160, V.A.C.S.), was a condition precedent to the commencement of the work, and that the statutory requirements would be read into the bond even in the face of express contrary provisions of the bond itself. The opinion of the court clearly predicates the holding on public policy. The same may be said of American Surety Co. v. Tarbutton. In that case the surety on the bond of a school district treasurer sought to escape liability on the ground that the bond was not conditioned as required by statute and was therefore void. The court held that the statutory provisions would be read into the bond and that other or contrary provisions would be treated as surplusage.

We know of no public policy to be served, no benefit to be reaped by the state, from a reading of the Relinquishment Act into the instrument here involved. It could only result in our making the instrument into something it is not, and that the parties did not intend it to be, in order to relieve Texas Company of the consequences of having bargained for and obtained a conveyance from Duval of a mineral estate which, as agent of the state, Duval did not own and could not convey. We cannot sustain the validity of the instrument by destroying its integrity. The position of Texas Company is not wholly unlike that of one of the parties in Patrizi v. McAninch, 153 Texas 389, 269 S.W. 2d 343, in which it was argued that we should sustain the validity of a contract which violated the antitrust laws because the parties contracted with special reference to the antitrust laws. We held that we were not at liberty to sustain the validity of the contract by destroying its integrity.

The trial court found that the evidence established all of the factual elements necessary to estop The State from asserting the invalidity . of the instrument, but concluded that no

estoppel would lie against The State because it acted in its sovereign capacity. The Court of Civil Appeals held that there was no evidence that Texas Company relied "upon The State of Texas in the course it follows," but that, in any event, The State was acting in its sovereign capacity in administering Public Free School Lands and that the acts and conduct of its officers and agents would not estop it from questioning the validity of the instrument. Both holdings are challenged by Texas Company.

■ Since we have no doubt of the correctness of the decision of the law question by the Court of Civil Appeals, we need not examine the correctness of its holding on the fact question. Whatever may be the holdings in other jurisdictions, and they seem to be conflicting, it is well settled in this state that the state holds public school lands in trust for the benefit of all the people of the state and administers them in its sovereign capacity. The acts and conduct of its officers and agents cannot estop it from recovering those lands or the value of the minerals produced therefrom. The Relinquishment Act authorized a conveyance of a mineral estate in the land here involved only by sale or lease, not by estoppel. See authorities cited by the Court of Civil Appeals, to wit: Fannin County v. Riddle, 51 Texas 360; Day Land and Cattle Co. v. State, 68 Texas 526, 4 S.W. 865; Saunders v. Hart, 57 Texas 8; Weatherly v. Jackson, 123 Texas 213, 71 S.W. 2d 259, 265-266; Humble Oil & Ref'g. Co. v. State, Texas Civ. App., 162 S.W. 2d 119, 134, writ refused. Neither could it be conveyed by administrative interpretation. We have held the instrument to be unambiguous. An unambiguous invalid instrument cannot be made valid by administrative interpretation.

■ The trial court denied The State a recovery of interest, before judgment, on the ground that the allowance of such interest was discretionary. The Court of Civil Appeals reversed this part of the judgment and rendered judgment for The State against Texas Company for interest in the sum of $278,073.48, that sum representing six per cent interest, figured on an accrual basis, on the difference between the gross proceeds from the sale of 14/16ths of the oil and gas, less the cost of production as shown by the Texas Company's books. The Court of Civil Appeals held that The State was entitled to interest as a matter of law. We agree with the holding of the Court of Civil Appeals.

The basis of Texas Company's complaint on this phase of

the case is that The State's suit was for unliquidated damages in that it sought a recovery of the reasonable value of the oil and gas sold less actual and reasonable cost of production, the difference to be established upon an accounting, and that Texas Company could not know what this difference would be since it could not and did not know that The State would agree upon actual sale price as the reasonable value of the oil and gas sold and did not and could not know that The State would agree that Texas Company's books accurately reflected the actual and reasonable cost of production.

Under any view of the matter Texas Company knew the amount of the net proceeds from the sale of the oil and gas produced from the land. By its retention and use of the money Texas Company became liable to The State for interest thereon at the legal rate as a part of its damages as a matter of law. In Watkins v. Junker, 90 Texas 584, 40 S.W. 11, a suit in which the defendant recovered damages in a cross-action for breach of contract in failing to furnish dredge boats as stipulated in the contract, the plaintiff objected to the recovery of interest, before judgment, on the damages on the ground that the damages were unliquidated. This Court said: "It is true that interest, strictly speaking, exists only by statutory law; but it is likewise true that courts have recognized the fact that compensation for detention of that which is due on account of injury inflicted is an element of damages necessary to the complete indemnity of the injured party." After a full discussion of the problem the court laid down the rule that interest should be allowed as damages when the principal damages are fixed by conditions existing at the time the injury is inflicted. The court then pointed out that in the greater number of cases the jury had been permitted to exercise its discretion in allowing interest, but said: "If interest be properly an element of damages in any case, then it is so as a matter of law." Watkins v. Junker was cited with approval by this Court in Ewing v. Wm. L. Foley, Inc., 115 Texas 222, 280 S.W. 499, 44 A.L.R. 627, in which interest, before judgment, was allowed as damages on a recovery for loss of profits growing out of an injury to the plaintiff's building. See also Phillips Pet. Co. v. Johnson, 155 F. 2d 185, cert. denied, 329 U.S. 730, 67 Sup. Ct. 87, 91 L. Ed 632; Settegast v. Trimmins, Texas Civ. App., 6 S.W. 2d 425, 429-430, writ refused; Humble Oil & Ref'g. Co. v. State, Texas Civ. App., 162 S.W. 2d 119, 137, writ refused. A contrary rule may not be evolved from the holding in Keystone Pipe & Supply Co. v. Zweifel, 127 Texas 392, 94 S.W. 2d 412. In that case interest

was disallowed on an item which was the subject of a continuing tender.

As has been observed, the trial court, in arriving at the amount of the judgment to be entered in favor of The State against Texas Company, allowed a deduction by Texas Company of the sum of $162,225.95 paid to Duval. The State was denied a recovery of this sum and Duval was allowed to retain it as damages to its surface estate. In addition, and for the same purpose, it was adjudged that Duval would continue to receive the value of the 1/16th royalty after the accounting date. In its brief in the Court of Civil Appeals The State did not complain of this phase of the judgment by any point of error. Texas Company did complain of it.

The majority of the Court of Civil Appeals held that The State was entitled to recover the value of the 1/16th from Duval, less actual damages to the surface estate, treated the error of the trial court in failing to so decree as being raised by Texas Company's points of error and as being "fundamental," and remanded this phase of the case for retrial to afford Duval an opportunity to prove up the actual damages to the surface. Dissenting Chief Justice Murray did not regard this phase of the trial court's judgment as erroneous, and felt, in any event, that the court was not at liberty to reverse in the absence of proper complaint by The State.

■ ■ We are disposed to agree with Chief Justice Murray that the record before the Court of Civil Appeals did not authorize the judgment entered on this phase of the case. The theory of the majority judgment was that Duval, as owner of the soil, was entitled to the 1/16th royalty " 'in lieu of all damages to the soil' " (Relinquishment Act) only when as agent of the state it executed a valid lease, and that in the absence of a valid lease it was entitled to nothing more than actual damages. We find it unnecessary to decide the question presented by this holding. When the state becomes a litigant in the courts it must observe and is bound by the same rules of procedure that bind all other litigants, except where special provision is made to the contrary. State v. Cloudt, Texas Civ. App., 84 S.W. 415, 416, writ refused; Producers' Oil Co. v. State, Texas Civ. App., 213 S.W. 349, 352, no writ history; State v. Houston Nat. Bank, Texas Civ. App., 259 S.W. 175, 176, writ refused. We do not think the error, if error there was, was fundamental within the rule of Ramsey v. Dunlop, 146 Texas 196, 205 S.W. 2d 979. By failing to assign error to this phase of the judgment as re-

quired by Rule 374, Texas Rules of Civil Procedure, The State waived any complaint it may have had. For an analogous situation, see the recent opinion of this Court in City of Deer Park v. State, ex rel. Shell Oil Co., this volume, page 174, 275 S.W. 2d 77, 81. We agree also with Chief Justice Murray's conclusion that Texas Company was in no position to raise the question.

Texas Company insists in this Court that it is entitled to recover the proceeds of the 1/16ths paid Duval and its assignee, plus interest, as damages for breach by Duval of the warranty of title to the 1/16th contained in executed division orders. Texas Company had a cross-action for recovery of the sum on this theory but recovery was denied by the trial court. In its brief in the Court of Civil Appeals it had no points of error complaining of the denial and must be held to have waived its right of recovery. Rule 374, Texas Rules of Civil Procedure. By its Eighth and Ninth Points Texas Company assigned error to the holding of the trial court that Duval could retain the proceeds of the 1/16th and could continue to receive and retain the same, but in no point did it assign error to the failure of the trial court to award the same to Texas Company as damages for breach of warranty. The wording of the points and the argument thereunder demonstrate rather clearly, we think, why the question now urged was not ruled on by the Court of Civil Appeals. It was not before that court.

Duval complains here, as it did in the Court of Civil Appeals, that it was error to render judgment against it and in favor of Texas Company for the sum of $9,940.00, as damages for breach of warranty, on Texas Company's alternative cross-action. The sum recovered by Texas Company represented $3,-500.00 paid by Texas Company to Duval as the cash consideration for executing the conveyance, plus interest.

Duval's argument is that since the instrument itself was void the covenant of general warranty contained therein was also void, and any right of recovery was not predicable on the warranty but only on money had and received, which right of recovery was barred by the two and four year statutes of limitations. The Court of Civil Appeals did not discuss this question.

We see no need to analyze the cases cited by Duval in support of its position or to determine their application to the fact situation here.

Duval joined with The State in asserting that the instrument in question conveyed an estate in fee simple absolute in the minerals, an assertion necessarily resulting in the invalidity of the instrument. If its argument in the Court of Civil Appeals may be taken to represent its position before the trial court, it was actually asserting the invalidity of the instrument. From Duval's brief we take these statements: "Once the nature of the conveyance is determined its invalidity immediately results and becomes apparent"; "So here, when the Duval County Ranch Company by making a perpetual mineral deed disabled itself forever thereafter .from representing the State, its deed was contrary to public policy and void"; "The judgment of the trial court is correct in holding the conveyance void * * *." Thus it appears that while Duval did not pray for a cancellation of the instrument it in fact joined forces with The State in seeking its cancellation. Moreover, Duval, in its pleading, asserted it came into court "with clean hands" and alleged that the granting of relief in connection with an accounting should restore "the parties as near as can be done to the positions which they occupied before the acts were committed."

■ Even if we should hold that Duval's liability to Texas Company is predicable only on money had and received to prevent unjust enrichment, a liability which is ordinarily relieved by the statute of limitations, we would not disturb the trial court's judgment on this phase of the case. It is a familiar rule of equity that "He who seeks equity must do equity." Thus it is held that one seeking an cancellation of an instrument, with certain exceptions not pertinent here, must restore the original status; he cannot repudiate the instrument and retain the benefits received thereunder. Gibson v. Lancaster, 90 Texas 540, 39 S.W. 1078; 7 Texas Jur., Cancellation of Instruments, § 46, p. 958, et seq. In Black on Rescission and Cancellation, Second Edition, Vol. 3, § 616, p. 1482, it is said: "* * * * it is necessary that a party seeking a rescission should offer or tender a restoration to the other and that the court, if appealed to, should be able to accomplish that result by its judgment or decree." That restitution of benefits may be required even though their recovery in an action at law would be barred by the statute of limitations is also settled. Rodriguez v. Hayes, 76 Texas 225, 13 S.W. 296, 299; Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co., (8th Circuit) 126 Fed. 46, 51. See also cases cited in Pomeroy's Equity Jurisprudence, Fourth Edition, Vol. 1, § 393 footnote, pp. 730-731. As is pointed out in the opinion of the Court of Civil Appeals, it is quite clear from the trial court's findings that Duval was allowed to retain the proceeds of the

1/16th royalty because of equitable considerations and not because Duval had become entitled to it as a matter of law through the execution of a valid conveyance under the Relinquishment Act. The record indicates that both Duval and Texas Company acted in good faith, and it was not beyond the power of the trial court to require Duval to do equity by returning the money it had received from Texas Company.

In so far as the judgment of the trial court decreeing title to the mineral estate in, under, and that may be produced from the land therein described to be in the State of Texas, subject to the right of Duval County Ranch Company to retain the proceeds of the 1/16th royalty paid to it and to continue to receive such 1/16th out of production as damages to its surface estate, was reversed by the Court of Civil Appeals, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court awarding the State of Texas a recovery of $666,787.75 and reversing the judgment of the trial court and rendering judgment for the State of Texas against The Texas Company for the additional sum of $278,073.48 is affirmed.

The judgment of the trial court cancelling the deeds from Duval County Ranch Company to R. E. Breeding and from R. E. Breeding to The Texas Company and removing the same as a cloud on the title of the State of Texas, as well as its judgment denying The Texas Company a recovery from Duval County Ranch Company of the proceeds of the 1/16th royalty, plus interest, but awarding Texas Company a recovery from Duval County Ranch Company of the sum of $9,940.00, is affirmed.

One one-hundredths of the costs is assessed against Duval and the remainder against Texas Company.

Associate Justice Garwood not sitting.

Opinion delivered March 30, 1955.

ON MOTION FOR REHEARING

MR. JUSTICE CALVERT delivered the opinion of the Court.

Texas Company's motion for rehearing points up some in-

accuracies in our opinion on original submission which should be corrected.

1. The opinion recites that it was "admitted that Breeding was acting as agent of Texas Company" when he took the quoted conveyance from Duval. The statement is immaterial to the decision and is withdrawn.

2. In connection with our discussion of the liability of Texas Company for interest before judgment as damages we made the following statement: "Under any view of the matter Texas Company knew the amount of the net proceeds from the sale of the oil and gas produced from the land." Complaint is made that "the record contains no evidence indicating that a sale of such oil was made." The statement is not material to our holding that Texas Company is liable for interest before judgment as is made clear by our approval of the rule laid down in Watkins v. Junker, 90 Texas 584, 40 S.W. 11, that interest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted. The good faith of Texas Company in converting the 14/16ths of the oil and gas to its own use, the reasonable market value of the oil and gas, and the reasonable cost of producing the same, were fixed by conditions existing at the time of the conversion and liability for interest as damages would follow as a matter of law.

3. We were in error in inferring that the only item on which interest was disallowed in Keystone Pipe and Supply Co. v. Zweifel, 127 Texas 392, 94 S.W. 2d 412, was "an item which was the subject of a continuing tender." A re-examination of the opinion of the Court of Civil Appeals (60 S.W. 2d 1065) and the opinion of this court in the Zweifel case, as well as an examination of the record in that case on file in this court, discloses that there was another item of damages, not the subject of a tender, on which this court disallowed a recovery of interest as damages. However, there was no contention before this court or the Court of Civil Appeals that the interest should be disallowed because the principal damages were unliquidated. Neither party briefed that question. Neither Watkins v. Junker, supra, nor Ewing v. Wm. L. Foley, Inc., 115 Texas 222, 280 S.W. 499, 44 A.L.R. 627, nor any of the other cases cited in our original opinion on this issue, were called to the attention of the court. This court's statement that the "value of the pipe was unliquidated and a matter of proof" as a basis for denying interest as damages was a gratuitous statement and was supported by

the citation of no authority. It was contrary to the well-reasoned rule of Watkins v. Junker which had been followed in many other cases prior to the Zweifel decision (as an example see Simmonds v. St. Louis, B. & M. Ry. Co., 127 Texas 23, 91 S.W. 2d 332, 335) and has been followed in many others since that decision. (For example see Texas & N. O. Ry. Co. v. Dingfelder & Balish, 134 Texas 156, 133 S.W. 2d 967). A glance in Shepard's Southwestern Citator shows that the Watkins case has been cited on the point in more than fifty cases, many of which we have examined and found to be in harmony. We cannot recognize the statement in the Zweifel case as binding authority for abandoning the rule of the Watkins case.

Many cases from other jurisdictions are cited for the proposition that the allowance of interest as damages is discretionary with the trial court, particularly in equity actions. No Texas cases in point are among those cited. Jones v. Mitchell, Texas Civ. App., 47 S.W. 2d 371, writ refused, was a true accounting suit following the dissolution of a partnership of twenty-three years duration. In Ingham v. Harrison, 148 Texas 380, 224 S.W. 2d 1019, interest as damages was denied because tender was made on the due date and rejected. Many cases could be cited from other states for the proposition that interest as damages is recoverable as a matter of right. See collation of cases in 96 A.L.R. 18, et seq., and 36 A.L.R. 2d 337, et seq.

This case well illustrates the wisdom and the justness of the rule laid down in Watkins v. Junker, supra. Texas Company has converted to its own use and benefit the 14/16th of the oil and gas which was the property of the State of Texas. The oil and gas had a market value at the time it was converted. The reasonable cost of producing it was also fixed at that time. To the extent of the difference between these two items it has had the use of the State's money. As a good faith trespasser it has been permitted credit for its expenditures in producing the oil and gas, according to its own records. We can perceive of no reason for holding that because it was a good faith trespasser it should also have the free use of the State's money. Texas Company has been made whole by giving it credit for all it expended. In addition it retains whatever profit it may have relized from the conversion of the oil and gas. The State can be made whole only by allowing it a recovery of interest on the net money value of its property. That it was necessary to require an incidental accounting to arrive at the principal sum due the State is no reason for permitting Texas Company to have the free use thereof or for denying the State a recovery

of interest thereon. Public Market Co. of Portland v. City of Portland, 171 Ore. 522, 138 P. 2d 916, 918.

■ 4. Texas Company's points of error complaining of the judgment of the Court of Civil Appeals in failing to award it damages for breach by Duval of the warranty of title to the 1/16th of production purchased from Duval were overruled on the ground that this right of recovery was waived by failure to present such points of error in the Court of Civil Appeals. Texas Company asserts there was no occasion for presenting such points of error in the Court of Civil Appeals since its prayer for recovery of such damages was upon the condition that the State should be awarded judgment against Texas Company for the value of the 1/16th, a condition which did not occur in the trial court.

It may be correct to say that the right of Texas Company to complain of this matter arose only under the judgment of the Court of Civil Appeals which decreed to the State a recovery against Texas Company of the value of this 1/16th. If that be correct, then the right of Texas Company to complain was lost when this court reversed the judgment of the Court of Civil Appeals on this phase of the case and affirmed the judgment of the trial court. On this phase of the case the judgment of this court is the same as the judgment of the trial court. If Texas Company had a right to complain of the trial court's judgment, it waived that right. If it had no right to complain of the trial court's judgment, it has no right to complain of this court's affirmance of that judgment.

All assignments of error briefed on motion for rehearing have been carefully considered, and being convinced that the judgment heretofore rendered is correct, the opinion is corrected as herein set out and the motion for rehearing is overruled.

Opinion delivered July 13, 1955.