**I. G. SMITH et al., Appellants,**

**v.**

**Ferd T. KILLOUGH et al., Appellees.**

**No. 4394.**

Court of Civil Appeals of Texas, Eastland.

Nov. 20, 1970.

Rehearing Denied Jan. 29, 1971.

Yates & Yates, Edmund C. Yates, Abilene, for appellants.

McMahon, Smart, Sprain, Wilson & Camp, Hudson Smart, Tom K. Eplen, Abilene, for appellees.

WALTER, Justice.

I. G. Smith, Gladys Smith and Hazel S. Sullivan executed an oil and gas lease on their land without a pooling agreement on June 3, 1965. The operator completed a producing well on the Smith property on March 2, 1966. In March 1966 the same lessors executed a correction lease containing a pooling provision.

Ferd T. Killough and wife executed an oil and gas lease containing a pooling agreement on June 13, 1966. They executed the lease before the honorable John H. Alvis a distinguished notary public in and for Taylor County, Texas. The operator drilled on Killough's land and plugged it as a dry hole July 12, 1966.

On or about July 27, 1966, the owner and operator of the Smith and Killough leases, executed a unitization declaration pooling and unitizing the lands described in the Smith lease and the East (7) seven acres of the land described in the Killough lease. A second well was completed on the Smith land on January 1, 1967 and was producing at the time of trial.

The Smith lease contains the following provision relating to pooling:

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises, such pooling to be into a unit or units not exceeding 40 acres each. Lessee shall execute in writing an instrument indentifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved.

* * * It is expressly agreed and provided that the above stated Paragraph 4 (the "pooling provision") of this lease shall be and the same hereby is amended by substituting the numerals "21" for the numerals "40" immediately following the word "exceeding", to the end that the authority to Lessee, his heirs and assigns, provided by said Paragraph 4 shall be limited to the creation by pooling or

unitization of a single unit not exceeding 21 acres, whether containing one or more wells; and it is further agreed and provided that Lessee, his heirs and assigns, shall in no event be authorized or empowered under the provisions of this lease to effectuate any pooling or unitization unless and until he or they shall have commenced operations for the drilling of an additional well upon the above described lands or a well upon the other lands being pooled or unitized therewith."

Smith and Sullivan were paid royalty from the production until the end of July 1966. Killough received a part of the royalty until the end of February 1968. Because of the protest made by Smith to the purchaser of the oil about Killough participating in the royalty, the royalty previously allocated to Killough was held in suspense.

I. G. Smith individually and as administrator of the estate of Gladys Smith, deceased, and Hazel S. Sullivan filed suit against Ferd T. Killough and his wife and the owners and operators of the oil and gas leases and the purchaser of the oil seeking to declare the unitization declaration null and void. Smith and Sullivan contended that the authority to pool or unitize the acreage was not an arbitrary power but the owners of the leases were in a position of a fiduciary or trustee for the mutual benefit of all concerned. They contended the Killough land was condemned by a dry hole at the time the unitization declaration was executed, and the pooling of their land with the Killough land was arbitrary and unreasonable and beyond the powers of the leaseholders.

The jury was asked the following questions and they gave the following answers:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that at the time of the pooling declaration dated July 27, 1966, was made, that it was the good faith judgment of the persons making the declaration that it was necessary or advisable to make it in order either to comply with applicable governmental spacing regulations or for the purpose of the conservation of oil and gas?

The burden of proof is on the plaintiffs to show by the preponderance of the evidence that it was not their good faith judgment.

Answer: 'It was not good faith,' or 'It was good faith.'

ANSWER: It was good faith.

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that before Ferd T. Killough and wife executed their oil and gas lease with a pooling provision, to M. E. West, about June 13, 1966, it was agreed between Ferd T. Killough and I. G. Smith in 1966 that the Killough and Smith tracts of land would be pooled and unitized for all further oil and gas exploration proceedings?

Answer 'Yes' or 'No.'

ANSWER: Yes

### SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that in 1966 I. G. Smith solicited Ferd T. Killough to execute a new lease with a pooling provision, as requested by the leaseholders?

Answer 'Yes' or 'No.'

ANSWER: Yes

If you have answered the foregoing Special Issue No. 3 'Yes', and in that

event only, you will answer the following Special Issue.

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that when I. G. Smith made his solicitation, if any, to Killough to execute a new lease, he represented to Killough that his land would be pooled with that of Killough's and the royalty paid on the ratio that Killough's acreage bore to the pooled acreage?

Answer 'Yes' or 'No.'

ANSWER: Yes

If you have answered the foregoing Special Issue No. 4 'Yes', and in that event only, you will answer the following Special Issue.

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that at the time I. G. Smith made such representation, if any, to Killough he intended for Killough to rely thereon?

Answer 'Yes' or 'No.'

ANSWER: Yes

If you have answered the foregoing Special Issue No. 5 'Yes', and in that event only, you will answer the following Special Issue.

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Defendant Killough did rely on such representation, if any, made by I. G. Smith; and that Killough would not have executed a new lease with the

pooling provision had it not been for such representation by Smith?

Answer 'Yes' or 'No.'

ANSWER: Yes."

The court rendered a take nothing judgment against Smith and Sullivan, validated the pooling declaration, and rendered judgment against Smith and Sullivan for $129.-86 as damages.

Smith and Sullivan have appealed.

By their first three points appellants contend there were no facts, when the pooling declaration was made, justifying the declaration being made (1) in order to comply with the spacing regulations of the Railroad Commission, (2) in the interest of conservation of oil and gas and (3) under the terms of appellants' lease.

It will be noted in Special Issue No. 1 that the burden of proof was placed upon appellants. The jury found against them by finding that in making the pooling declaration the owners of the leases acted in good faith. No objections were made to any of the issues.

The appellants have the burden of showing that the evidence establishes conclusively that the owners of the leases acted in bad faith. In Chief Justice Calvert's article on "No Evidence" and "Insufficient Evidence" in Texas Law Review, Vol. 38 #4 at page 363 he said:

"The fourth situation is not a true 'no evidence' situation. It usually arises when a jury find the non-existence of a vital fact or gives a negative answer to an issue inquiring as to the existence of a vital fact, whether the fact be vital to a plaintiff's claim or to an affirmative defense. Points of error in that situation which assert that there is no evidence of probative force to support the jury's finding really miss the target.

For example, what does it benefit a party that there is no evidence to support a jury finding that the opposite party did not commit a negligent act? Before a party is entitled to have a judgment based on the answer reversed and judgment rendered in his favor it must appear that the evidence establishes conclusively that the act was committed. In this situation it would be much better to forget the words 'no evidence' and assert in the point of error, as well as in the basic procedural steps in the trial court, that the evidence establishes conclusively, or as a matter of law, that the act was committed."

We find that the evidence does not establish conclusively that the persons making the pooling declaration acted in bad faith, and the pooling declaration was authorized under the terms of the lease.

We find no merit in appellants' point asserting that Killough was not entitled to attorney's fees.

We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.

On Motion For Rehearing.

Our opinion and judgment rendered on December 11, 1970 on appellants' motion for rehearing is set aside.

Appellants' application to amend their brief by changing the words "attorneys fees" to interest in their point number eight is granted. We have considered such point as amended and it is overruled. We hold that interest as damages is allowed as a matter of law. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83 (1955).

The judgment is in all things affirmed.