## TIDEWATER ASSOCIATED OIL CO. v. CLEMENS.

### No. 5563.

Court of Civil Appeals of Texas. Texarkana.

Dec. 8, 1938.

W. H. Sanford and Conan Cantwell, both of Dallas, for appellant.

Lacy, Price & Williams, of Longview, for appellee.

JOHNSON, Chief Justice.

This appeal is from an order, entered after notice and hearing, granting a temporary injunction in terms as follows: "It is, therefore, accordingly ordered that the Clerk of this Court issue a temporary writ of injunction restraining the Tide Water Associated Oil Company, the defendant herein, its agents, servants, and employees from interfering with the plaintiff, C. C. Clemens, in making a connection upon the return residue gas line upon the land described in plaintiff's original petition and that the defendants herein permit the said C. C. Clemens to make said connection and take from said gas line his share of the gas returned to the aforesaid lease."

Appellant, Tidewater Associated Oil Company, has asserted a number of propositions supported by appropriate assignments of error which we think are well taken, but the decision we have reached renders it unnecessary to set them out. Some of the rules of law involved in appellant's propositions will be applied in our discussion of appellee's theory of the case. Appellee is the lessor in an oil and gas lease covering 28.9 acres of land in Gregg County. He filed this suit to recover, by way of injunction, a specific percentage of the gas in kind being produced on the land. The rights of the parties with respect to the gas are determined by the effect to be given certain provisions contained in two contracts. First, the oil and gas lease mentioned, whereby title to all the gas produced on the land was conveyed to the lessee. Second, an instrument termed in the record a "sales contract" whereby the lessee with certain reservations and exceptions conveyed all the gas to a third party. The provisions contained in the oil and gas lease, material to the issues here involved, read as follows:

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay to lessor, as royalty for gas from each well where gas only is found, while the same is being sold or used off of the premises, one-eighth of the market price at the wells of the amount so sold or used, the lessor to have gas free of charge from any gas well on the leased premises for all stoves and inside lights in the principal dwelling house on said land by making lessor's own connections with the well at lessor's own risk and expense.

"3rd. To pay to lessor as royalty for gas produced from any oil well and used by lessee for the manufacture of gasoline, one-eighth of the market value of such gas. If such gas is sold by lessee, then lessee agrees to pay lessor, as royalty, one-eighth of the market price at the wells of the amount sold.

\* \* \* \* \* \*

"Lessee shall have the right to use free of cost, gas, oil and water produced on said land for all operations thereon, except from water wells of lessor."

Appellant owns and operates the lease as lessee. There are six oil wells on the land, from which oil is being produced. With the oil there is produced a small amount of "wet" or "casinghead gas." The oil and casinghead gas come out of the well together and go immediately into a separator located on the lease where appellant separates the casinghead gas from the oil. Appellant then sells both the oil and the gas, with the exception or reservation of a sufficient quantity for operations on the lease. The gas only and not the oil is involved in this suit. The market value of the gas is based principally upon its most valuable content, gasoline. The gas remaining after the gasoline has been extracted therefrom is called "residue gas" to distinguish it from wet or casinghead gas, and also to distinguish it from "dry" gas such as is produced by a gas well, that is, a well where gas only is found.

The Gregg-Tex Gasoline Corporation owns and operates a casinghead gas plant located in the East Texas oil field. It purchases casinghead gas from a great number of leases in the field, extracts the gasoline therefrom and sells both the gasoline and the residue gas. Appellant has with certain reservations and exceptions sold all the casinghead gas being produced on the land in question to the Gregg-Tex Gasoline Corporation, under a sales contract, the provisions of which material to the issues here involved read as follows:

"Now, therefore, in consideration of the sum of One ($1.00) Dollar paid by the Buyer to the Seller, receipt of which is hereby acknowledged, and other payments and covenants hereinafter specified, the Seller hereby grants, bargains, sells and agrees to deliver to the Buyer and the Buyer agrees to purchase and take from the Seller, subject to the stipulations and conditions hereinafter specified, all the casinghead gas now or hereafter produced from the wells on the lands hereinabove described.

"5. Residue Gas—The buyer shall return to the nearest boundary line of the seller's lease, above described, sufficient residue gas for the development and operation of said lease, the amount of such gas not to exceed that remaining from the quantity of casinghead gas delivered to the buyer from said lease after the extraction of gasoline therefrom, less the proportionate part of said residue gas necessary for gasoline plant operation, both determined by the residue gas curve attached hereto (Exhibit 'B'); provided that in the event residue gas to be returned hereunder by the buyer shall be insufficient in quantity for the purpose of developing and operating said lease, the seller hereby reserves the right to use casinghead gas from its lease sufficient in quantity to make up the deficiency. Utilization of said residue gas so returned by the buyer shall be at the seller's risk. In the event seller accepts and uses dry gas, furnished by buyer, in excess of the amount of residue gas to which seller is entitled, seller shall pay buyer for such dry gas at delivered cost to buyer.

"It is agreed and understood by and between the parties hereto that if and when the residue gas remaining after the extraction of gasoline from such casing-head gas shall be more than sufficient for the needs of buyer in the operation of said gasoline plant and more than sufficient for the needs and requirements of seller for the development and operating purposes upon the premises from which the said casinghead gas is produced, then, and in that event; the buyer shall have the right to sell any or all surplus residue gas so remaining; provided that in the event of sale by the buyer of any or all of such residue gas, buyer shall pay to the seller herein fifty per cent of the net proceeds received from the sale of such gas, such payments to be made at the same time as other payments hereunder. Net proceeds as herein used is defined as the gross proceeds less any cost of boosting and/or transportation necessary to market such gas. It is further agreed and understood that as a basis of settlement hereunder for the sale of residue gas, it shall be determined how much residue gas the seller was entitled to have returned and the volume that actually was returned during the month for which settlement is to be made, and the difference shall be regarded as the volume of surplus residue gas available for sale from the casinghead gas delivered hereunder. The volume of surplus residue gas sold from the casinghead gas delivered hereunder shall be determined by the proportion which the volume of surplus residue gas available for sale from said delivery bears to the total volume of surplus residue gas available for sale from all casinghead delivered to said plant.

"5-A Gas for Operations—It is understood and agreed by the parties that gas required by seller for re-pressuring purposes and/or for the purpose of lifting oil, or for any other purpose considered desirable by seller in connection with its operations on said properties, or either of them, shall be considered as gas necessary for operating purposes.

"10. Price—The price to be paid for casinghead gas sold and purchased hereunder, shall be the market price as hereinafter defined, for the percentage of the gasoline content of casinghead gas sold and delivered for which payment shall be made, as such percentage is determined by the following schedule:

"Schedule showing percentage of casinghead gasoline content for which payment shall be made, depending on (a) mar--

ket price and (b) gasoline content per 1,000 cubic feet of casinghead gas: the market price at the wells of the amount sold; (2) upon the effect to be given to

| Average Quoted Price per Gallon | Gasoline Content less than .75 Gallon | Gasoline Content .75 Gal. but less than 1.76 Gals. | Gasoline Content 1.76 Gals. or above |
|---|---|---|---|
| 2¢ or less.................. | 5% | 10% | 15% |
| More than 2¢ but less than 4¢ | 10% | 15% | 20% |
| 4¢ but less than 6¢......... | 15% | 20% | 25% |
| 6¢ or more................ | 20% | 25% | 33⅓%." |

In order to make appellee's contentions clear it is thought best to first state what he does not contend. Section 2 above copied from the royalty provisions of the lease is the only provision in the lease wherein appellee is entitled to demand any gas in kind, and then only in the event a "gas well" is found on the land, and in that event he is not entitled to demand a specific percentage of the gas, but only an amount sufficient "for all stoves and inside lights in the principal dwelling house on said land." Appellee does not base his claim in this suit, nor could it be based upon said Section 2 of the royalty provisions of the lease; because there is no gas well on the land, within the well-known and popular usage of the term "gas well," meaning a well producing gas only; and because appellee admits that the gas which he is here seeking to recover is not for use in his dwelling house; that his dwelling house is supplied with gas from another source; that the gas he is here seeking to recover is for fuel in a filling station and to fire a pressing-shop boiler; and that he is here seeking a specific percentage of gas as a rental due under the royalty provisions of the lease.

Appellee does not claim that appellant, in the sales contract above mentioned, has sold the casinghead gas for less than its fair market price at the well, and he does not contend that appellant has failed to pay him ⅛ of all the money received from said sale. Appellee does not in any wise attack the validity and fairness of the sales contract.

It is appellee's contention that he is entitled to receive in kind ⅛ of the residue gas which is being returned to the lease and used by appellant, free of cost, in operations thereon. The contention is based: (1) upon the effect to be given Section 3 of the royalty provisions above copied from the lease, wherein it is provided that if gas produced from an oil well on the land is sold by the lessee then the lessee agrees to pay to the lessor as royalty ⅛

Section 5 copied above from the sales contract, wherein it is provided in substance that the buyer, Gregg-Tex Gasoline Corporation, shall return to the land a sufficient amount, if there be such, of the residue gas for appellant's use, free of cost, for operations on the lease. It is appellee's contention that said provisions of the sales contract should be given the effect, that the residue gas agreed to be returned to the lease for appellant's use, free of cost, for operations thereon, constitutes a part of the purchase price or consideration received by appellant from sale of the casinghead gas; and that said provisions of the lease contract should be construed as entitling appellee to ⅛ of such residue gas in kind.

Appellee concedes that by the grant in the lease ownership and title to all the gas produced from the land passed to appellant. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. Appellee further concedes that appellant's agreement to pay the rentals stipulated in the royalty provisions of the lease is a personal obligation on the part of appellant, a promise to pay a specific price for a thing—gas—already conveyed to and owned by appellant. Reynolds v. McMan Oil & Gas Co., Tex.Com. App., 11 S.W.2d 778. And it is not disputed but that appellant's ownership of all the gas comprehends ownership of every constituent element thereof and that he had the right to sell same or any part thereof, charged only with appellee's right to demand and appellant's corresponding obligation to pay the agreed rental on the gas sold, which in this case is "⅛ of the market price at the wells of the amount sold." Magnolia Petroleum Co. v. Connellee, Tex. Com.App., 11 S.W.2d 158.

It is not shown in the evidence that any deduction was made from the market price of the casinghead gas by reason of the provisions in the sales contract for the return to and free use by appellant of a sufficient amount of the residue gas for

operations on the lease, or that appellee is in fact receiving any less rental because of such provision. But should it be assumed, which we do not affirm, that the provisions of the sales contract in question are susceptible of the construction that the portion of the residue gas agreed to be returned to the lease for appellant's use, free of cost, for operations thereon, constitutes a part of the consideration received by appellant from sale of the casinghead gas, or that its value was taken into consideration and deducted from what appellant would otherwise have received from sale of the casinghead gas, and that to such extent appellant has sold the casinghead gas for less than its "market price at the well," then and in such facts appellee's rights would be no more and no less than as are clearly fixed by the terms of his own lease contract, that is, to recover of appellant "⅛ of the market price at the well of the amount sold"—credited with the amount of rentals already paid. But such facts would constitute no grounds for appellee's suit seeking to recover, by way of injunction, ⅛ of such gas in kind.

And as we construe the instruments appellee is to receive only the money rentals provided in the royalty provisions of the lease and is not entitled to demand in kind any percentage of the residue gas, nor is appellant liable to pay appellee any rental on that portion of the residue gas returned to the lease for use, free of cost, in operations thereon. Appellee's contentions in the matter fail to take into consideration appellant's right provided for in the lease "to use, free of cost, gas, oil, and water produced on said land for all operations thereon." The provisions in the sales contract go no further than to reserve and protect that right in appellant. It limits appellant's free use of the residue gas to that produced from the land, and to that used for operations thereon. In retaining the right to use the gas after instead of using it before the gasoline has been extracted therefrom, appellant violated no provision of the lease contract but acted to appellee's advantage in increased rentals.

Appellee further contends that some of the residue gas produced from his land is being blown into the air and burned, and that appellant has been permitted to use free of cost some of such gas for operations of leases on other than appellee's land. What we have already said in our discussion above we think sufficiently shows that such facts add no support to the injunctive relief sought in this case.

The judgment of the trial court will be reversed and the injunction ordered dissolved.