**DUNN et al. v. REPUBLIC NATURAL GAS CO.**

**REPUBLIC NATURAL GAS CO. v. DUNN et al.**

No. 9970.

Circuit Court of Appeals, Fifth Circuit.

Dec. 2, 1941.

Rehearing Denied Jan. 16, 1942.

As Corrected Feb. 16, 1942.

Wm. R. Watkins, of Fort Worth, Tex., Jno. C. North, of Corpus Christi, Tex., and Charles Kyran Walsh, of Wichita Falls, Tex., for appellants and cross-appellees.

B. D. Tarlton and Charles L. Hale, Jr., both of Corpus Christi, Tex., for appellee and cross-appellant.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants are John Dunn, the maker, and his children the heirs of his deceased wife co-maker, of oil and gas leases and gas purchase contracts on lands in Nueces County. They brought this suit for an accounting for gas taken from and for a judgment declaring their rights in, the oil and gas leases and the gas purchase contracts on said lands. Their claim was that though obligated by a gas lease[1] of August 10, 1922, an oil lease[2] of January 14, 1930, and a gas purchase contract[3] of September 30, 1930, to pay plaintiffs at the prices named in the contract, for five million cubic feet of gas per day, and to save, and sell for not less than five cents per m. c. f., all gas from plaintiffs' leases in excess of five million feet, defendant had, in its oil operations, been using great quantities of gas for "jetting", repressuring, etc., without accounting to plaintiff for its ⅛ royalty thereon.

The defense was that the gas it had so used was not the gas provided for in the gas lease and the gas purchase contract, but was gas produced with and as a constituent part of the oil produced under the lease, and being so produced, defendant was not obligated to account to plaintiffs therefor, but only obligated to account to plaintiffs for its royalty of ⅙ of the oil produced. A master was appointed to take and report the evidence, and on testimony presenting no substantial points of conflict, he filed voluminous findings of fact. The District Judge, finding no fault with the master's findings except that they were unduly voluminous, made briefer findings of his own, to the effect: that defendant had faithfully, and in accordance with its contract obligation, paid plaintiffs for all gas it had sold from plaintiffs' lease, whether produced from gas wells or with oil from oil wells, and that it has regularly accounted to and paid plaintiffs for five million cubic feet of gas per day, the minimum provided for in the contract. More than one-half of this has come from other leases

---

[1] This lease provided for a ⅛ royalty on both oil and gas. It further provided that if oil was not discovered in three years, the oil rights would lapse. Gas but not oil was discovered prior to August 10, 1925. The oil rights lapsed and the lease remained, and remains in force as a gas lease. Under its terms and the terms of gas purchase contracts made from time to time, plaintiffs have received large sums for gas taken from the Nueces field.

[2] This lease reserved a ⅙ oil royalty and provided "it is expressly understood and agreed that this lease is for oil and other minerals except gas and is not to conflict with, but is in full recognition of, the existing lease for gas now held by the lessee."

[3] It provides that it terminates, cancels, and sets aside all existing contracts for the sale of gas from the John Dunn leases, and for the payment to Dunn for the sale of gas to parties using the same in Nueces County. It provides that for one year from the contract date, Dunn will receive ⅛ of the proceeds of the sale of a minimum of four million cubic feet of gas per day and for a period of 21 years after that, ⅛ of the proceeds of the sale of a minimum of five million cubic feet of gas per day. Under its terms, this payment is to be made to Dunn whether the gas is taken from the Dunn leases or from other properties in the county owned by lessee, and Dunn will be paid this as long as the

leases owned by it in Nueces County will produce the minimum. Clause 3 provides that in the event lessee takes more gas from the Dunn leases than the minimum provided for, it will pay ⅛ of the proceeds received by it from the sale. And it is further agreed that if it takes less than the minimum from the Dunn leases, the gas it does take from them will be applied on the minimum.

Clause 4 provides that as long as the contract lessee has with the City of Corpus Christi exists, Dunn shall be paid for the minimum on the basis of the price received from the sale; that is, ⅛ of the proceeds of the sales under the contract; seven and one half cents per m. c. f. for the first, five cents per thousand for the second, two million cubic feet of gas per day, and four cents per m. c. f. for all gas the city purchased over and above four million. It further provides that in the event the city contract should be terminated, Dunn should be paid on the basis of the highest price received by the gas company from the sale of gas under any then existing contract with other purchasers provided the basis of payment shall never be less than five cents per m. c. f. Finally there is a provision; that the contract shall not modify the existing leases; that Dunn shall have access to the charts of the gas company showing the amount of gas taken from his leases; and that all gas taken from the Dunn leases shall be metered at the well.

than plaintiffs and thus plaintiffs have, under their contract, received pay for twice as much gas as their lands have furnished. He found too that defendant had conducted its oil operations with diligence, prudence and skill, and in the best interests of both plaintiffs and defendants. As to the use of the gas for "jetting", of which plaintiffs complain, he found that this was necessary and proper in order to obtain the maximum production of oil. For, the oil was highly impregnated with, and when produced in substantial quantities, brought up in solution great quantities of gas and in order to obtain permission to produce the field at this high gas oil ratio, it was necessary for defendant to, and it did, provide a beneficial use for the gas thus excessively produced. In order to do this defendant built, at great expense, a high pressure pipe line to convey the gas from the oil wells on the upper Dunn tract[4] to the wells of plaintiffs located on that lease, and on others of defendant's leases. In 1937, before beginning the use of plaintiffs' gas for this purpose, defendant notified plaintiffs of their intention to do so and offered them $300 a month for the privilege. Plaintiffs declining this offer, defendant thereafter used the gas without making payment therefor.

During the period in controversy defendant paid plaintiffs for 3,625,000 m. c. f. of gas produced from their leases, and during the same period it produced with oil, and used for jetting without payment for it, 2,-765,912 m. c. f. of gas. There was no market for this gas except for jetting purposes and the market price for that purpose was one cent per thousand cubic feet. Of this excess gas produced with oil, defendant used 1,929,256 m. c. f. on the Dunn tracts, that is, in wells on plaintiffs' land, the balance on other wells. Finding that under the terms of the oil lease, defendant had a right to use the gas for "jetting" without obligation to plaintiffs therefor, so long as it used it on wells on plaintiffs' lands, but that for so much of the gas as it used for "jetting" on other lands, it was liable for one cent per m. c. f., and concluding that aside from this there was no real matter in controversy, the District Judge gave judgment for $1045.80 and refused the declaratory relief they prayed.

Plaintiffs are here insisting that under the undisputed facts, they were entitled to a judgment for five cents per m. c. f., for all of the gas used for "jetting", as well that used on their leases as that used on other leases, and that they were also entitled to a judgment declaring their rights for the future. Defendant on its part, insists that the judgment insofar as it denies plaintiffs a recovery was right and should be affirmed, and by cross-action seeks a reversal of so much of the judgment as was against it. It does this on two grounds. One of these is that the gas thus used was a part of the oil and under a reasonable construction of the lease they were entitled to its use in production operations. The other is that, if mistaken, in this, they are not liable to pay for it because though during the period in suit, it was produced in excess of five m. c. f., it was not excess gas for which payment must be made, but gas which under Clause 3 of the contract, it was entitled to credit on the minimum it had paid plaintiffs, for during the life of the contract it has paid plaintiffs under its provisions for far more gas than it has taken from their leases.

We agree with the District Judge; that no case for declaratory judgment was made out; that plaintiffs were entitled to recover for gas used for "jetting" off of their leases; and that this recovery should be at the market price of one cent as found by him and not as appellants' claim, at five cents. We agree with appellants and not with the District Judge though, that they are entitled to a recovery for all of the gas used for "jetting", as well that used on their leases as that used on the leases of others. Whatever may be said of the rights of an oil operator conducting ordinary operations under an ordinary oil and gas lease containing the ordinary provisions, that lessee shall have the right to use free of cost, gas, oil and water produced on said land for its operations thereon, Cf. Armstrong v. Skelly Oil Co., 5 Cir., 55 F.2d 1066; Utilities Production Corp. v. Carter Oil Co., 10 Cir., 72 F.2d 655; Gregg v. Caldwell-Guadalupe Pick-Up Stations, Tex. Com.App., 286 S.W. 1083; Guffey v. Stroud, Tex.Com.App., 16 S.W.2d 527, 64 A.L.R. 730, this is not such a lease, these are not such operations. The operations in question here are under a lease for oil which expressly excepts gas from its grant, and the use provision in it is limited to

---

4 In accordance with the terms of the oil lease, defendant has developed the 60 acres known as the upper Dunn tract, with 10 oil wells all located low on the structure.

"sufficient oil or water produced from said premises free of cost, to operate any machinery it or they may use for the purpose of drilling, pumping or otherwise on any ordinary wells or products on said premises." But over and above the question of construction arising on the terms of the lease whether the gas used for "jetting" was oil and whether it was used "to operate machinery, is the fact outstanding here that these were not ordinary oil producing operations conducted for oil produced under ordinary gas oil ratios. These are extraordinary operations, the very essence of which is that since great quantities of gas, enormously in excess of the normal gas oil ratio permitted, are brought up with the oil, these excess quantities of gas oil are recognized to be and are dealt with, not as normal constituents of the oil produced in normal development, but as gas produced for which a beneficial use as gas must be provided. Defendant itself recognized this to be so and in recognition of it proposed for $300 a month to purchase the right to use this gas. It realizes that it cannot do this with regard to any of the gas produced with the oil that it sells. The record shows that, gas produced with oil in the same way as the gas in question here, was sold, a small amount to the City of Corpus Christi and a large amount to the Houston Gulf Gas Company, and that defendant has accounted to plaintiffs for its portion of the proceeds of such sales. In such circumstances it will not do to say that the gas is a part of the oil and that defendant has paid for it when it has paid the plaintiffs the oil royalty provided for. In such circumstances, while under the established facts in this case, this use has enured to plaintiffs' benefit in the production of oil and its use by defendant has been justified as a reasonable use, defendant cannot take plaintiffs' part of the gas without paying them for it as gas. It cannot be the law that the use to which the gas is put, whether for sale or for reworking the wells, determines whether plaintiffs are entitled to a share in it.

■ Nor does defendant stand any better on its claim that since during the whole period of the contract, it has paid plaintiffs for a great deal more gas than it has taken from their leases, the excess taken during this period should be credited as below the minimum. Paragraph 3 of the contract providing for such crediting, cannot, we think, be so construed. It contemplates a current adjustment. It does not authorize the excess of the takings in the period in question, to be charged back to arrearages in taking in earlier years.

■■ Plaintiffs' claim that they must be paid for this gas at five cents, finds no support either in the facts or in the contract. The provision for five cents contained in the contract applies only to the period after the City of Corpus Christi ceases to take gas and that period has not yet arrived. If the gas had been sold the contract provision applying would be found in Clause 3. It provides for payment to plaintiffs of ⅛ of the proceeds received from the sale of all excess gas. Since the gas was not sold, the contract cannot be resorted to but the price must be arrived at by determining, it must be based on, the market price of the gas used but not sold. The master and the District Judge found that there was no market for the gas in question except for "jetting", and that the market price for this use was one cent per m. c. f., and this finding as to market price is not questioned. Plaintiffs urge that the leases and the contract taken as a whole, impliedly if not expressly contemplate and provide that excess above the minimum taken from plaintiffs' property, must have a preferential sale as respects other tracts and that therefore since during the period, a great deal more than the minimum five million cubic feet a day was taken by defendant from plaintiffs' leases and leases in that vicinity, it cannot be said that there was no market for the gas in question except for "jetting". This will not at all do. Nothing in the leases or the contract obligated defendant to take any gas from plaintiff, and if defendant was so minded, it could operate the properties for the 21 years, without taking a foot of gas. Such gas as it takes and sells it credits first to the minimum and then pays for it at the price it receives. Beyond this the contract imposes no obligation upon it. Under the facts of this case showing that the use of the gas for "jetting" was reasonable and for the benefit of both plaintiffs and defendants, plaintiffs cannot complain of the use by defendants but only of its failure to pay plaintiffs for its part of the gas so used, the reasonable value thereof.

The judgment is reversed and here rendered for plaintiffs, for $3,457.39, to bear interest at 6% per annum, from October, 1, 1937, and all costs of the appeal.