**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**W. H. HAM, Appellee.**
No. 15495.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1955.

Rehearing Denied Jan. 24, 1956.

C. J. Roberts, E. H. Foster, Amarillo, Tex., R. L. Foster, Harry D. Turner, Bartlesville, Okl., for appellant.

Howard F. Saunders, Sanders, Scott, Saunders & Smith, Amarillo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by Phillips Petroleum Company, hereinafter called "Phillips", the assignee of the lessee in two oil and gas leases dated February 28, 1944, one, executed under the Relinquishment Act [1] of the State of Texas, embracing the NW/4, the other the S/2 of Section 122 in Block 44, H. & T. C. Ry. Survey in Hartley County, Texas, the suit was for an injunction to prevent lessor from taking gas in kind from the Inez well the lessee had drilled on the S/2 of the Section, and for damages for the gas already taken therefrom.

The claim was that he had been doing and was threatening to do this in contravention of the Relinquishment Act, which gave him no title to the minerals but only an interest in the proceeds [2]

[1]. Acts of 1919, 2nd C.S. p. 249, Art. 5367 et seq., Texas Civil Statutes 1925.

[2]. Greene v. Robison, 117 Tex. 516, 8 S.W. 2d 655; 7 Texas Law Review, 125; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d

realized therefrom, and of the communitization agreement [3] executed July 24, 1949, by him and his wife, as lessor, and Phillips Petroleum Company, as lessee and operator, by which the two leases were pooled into one consolidated leasehold estate, the gas produced therefrom to be "treated as an entirety and the *proceeds thereof* paid to the owner of each tract", according to the royalty fixed in each lease and in the proportion that its acreage bears to the entire acreage in the pool. (Emphasis supplied.)

The defendant moved to dismiss, **for** want of jurisdiction, for lack of indispensable parties, and for the failure of the petition to state a claim, but filed no answer. The court, taking the matter up on the motions, received evidence on the motion to dismiss for want of a claim, and, the hearing over, denied the motions to dismiss for want of jurisdiction and of indispensable parties.

Declaring, however, that under the terms [4] of the lease of the NW¼, the defendant was "entitled to a $\frac{1}{16}$ part in

---

53; But see Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 and Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769. Cf. Texas Company v. State, Tex. Sup., 281 S.W.2d 83.

3. As material here, this agreement provided:

"1. For and in consideration of the sum of Ten Dollars and other valuable considerations, receipt of which is hereby acknowledged, and in order to accomplish the conservation of the gas and to prevent economic waste in the production thereof, it is agreed by the undersigned parties who are owners of mineral interests in, to and under the land hereinafter set out opposite their names, that said land, *insofar as the gas and gas rights therein and thereunder are concerned, is hereby and herein communitized and consolidated with all of the following described lands, to wit:*

"Northeast Quarter (NE/4) and South One-half (S/2) of Section 122, Block 44, H&TC Survey, Moore and Hartley Counties, Texas,
*and the lands so consolidated shall be de-*

veloped and operated as one leased tract as if said consolidated tract had been originally covered by one oil and gas lease, except as hereinafter provided in paragraph two. Any gas well or wells drilled on said consolidated lands, regardless of where located, shall be deemed to have been drilled under the terms of, and located upon lands covered by, each of said oil and gas leases and production of gas from such well or wells shall operate to keep in force the entire leasehold estate under each of said leases. Not more than one gas well shall be required to be drilled on the consolidated lands regardless of where, when or by whom offset wells are drilled. (Emphasis supplied)

"2. *The gas produced from the consolidated tract shall be treated as an entirety, and the proceeds thereof shall be paid to the owners of each tract (both working and royalty, as their interest in such tract may appear) according to the applicable royalty provisions of the lease covering each of said tracts in the proportion that the area of such tract bears to the areas of the entire consolidated tract.* (Emphasis supplied)

\* \* \* \* \* \* ~ \* \* \* \* \* \*

"Executed this 21st day of July 1949.
"Mineral Interest in Lands;
"Our entire royalty interest in and under all of the Northwest Quarter (NW/4) of Sec. 122, Bk 44, H&TCRy. Co. Survey, Hartley County, Texas.
"Entire 7/8th working interest

Name:

W.H.Ham
Inez Ham

Phillips Petroleum Company."

4. "The lessee covenants and agrees (1) to pay to the commissioner of the General Land Office of the State of Texas, at Austin, Texas, free of cost in the pipe line with which the well or wells may be connected, 1/16 of the value of all the oil and gas produced and saved from said leased premises as required by Art. 5368 of the General Laws of the State of Texas, 1925;

(2) to deliver to the credit of the lessor as the owner of the soil, free of cost in the tanks or pipe lines to which wells may be connected an additional equal 1/16 part of all oil and gas *produced and saved from said leased premises,* or, at the option of the lessor 1/16 of the value of all oil and gas produced and saved from said leased premises." (Emphasis supplied.)

kind of the gas production referable under the communitization agreement to the NW¼ of Sec. 122, or to a total of ¹⁄₆₄ of the gas produced from said section under leases now existing, but the court decides nothing about the additional royalty interest of defendant in the gas produced from Sec. 122 in question", the court, sustaining the motion to dismiss for failure of plaintiff's complaint to state a claim for injunction, and "reserving action on the claim for an accounting or money damages", dismissed on the merits the suit for injunction.

Appealing from that judgment, plaintiff is here insisting that the provisions in clause 2 of the lease to the NW¼, "to deliver to the credit of the lessor as the owner of the soil, free of cost, in the tanks or pipe lines to which wells may be connected, an additional equal ¹⁄₁₆ part of all oil and gas produced and saved from said leased premises or, at the option of the lessor, ¹⁄₁₆ of the value of all oil and gas produced and saved from the premises", on which the district judge relied for his finding and order, does not support it.

In support of this contention, it puts forward two grounds. The first is that the provision for delivery in kind, in recognizing Ham, the agent of the state for the making of the lease, as owner of a part of the gas, was contrary to the Relinquishment Act of the State of Texas, under the authority of which it was executed, and the provision was, therefore, invalid and unenforceable *ab initio*.[5] The second is that if originally valid, this provision has been superseded and displaced by the July 21, 1949 agreement, note three *supra*, communitizing lessor's and lessee's gas and gas rights, which, on its face and as interpreted by the

parties acting thereunder, represented the abandonment by the defendant of the provision for taking gas in kind, and the irrevocable exercise by him of the option provided in the lease to the NW/4 to receive in lieu thereof, "¹⁄₁₆ of the value of all oil and gas produced and saved from said leased premises".

The appellee, opposing these contentions, urges upon us: that the provision in the lease of the NW/4, under which he was accorded the right to take his royalty in kind, is plain, clear and unambiguous, and must be given effect unless the appellant has shown, either that the provision is in violation of law or, if valid, has, as claimed by it, been superseded; and that appellant has entirely failed to show that either is the case.

■■ We find ourselves in agreement with appellee's first position: that the provision in the lease to the NW/4 for delivery to Ham, as owner of the said ¹⁄₁₆ part of all oil and gas produced from said leased premises, in kind is clear on its face; that whatever has been said in the decision cited in note 2 *supra*, or may hereafter be said, as to the rationale of the act and the reconciliation of its provisions with other provisions of Texas law, the provision is not illegal in the sense of being forbidden; that the evidence showing that the lease was approved by the General Land Office and agreed to by the lessee, appellant, as his assignee, would be bound by and could not challenge the provision as illegal; and that, if a well had been drilled thereon, with production had, appellee would, but for the communitization agreement, have been entitled to receive said royalty in kind.

■ Since, however, under the facts[6] pleaded and testified to, no well was

---

5. Cf. State v. Magnolia Petroleum Co., Tex.Civ.App., 173 S.W.2d 186 and Texas Company v. State, Tex.Sup., 281 S.W.2d 83.

6. The Inez gas well, from which comes the only production on the pooled leases, is located on the S/2 of Sec. 122. Phillips drilled this well in 1945, after having, under the provisions therefor in each of

them, consolidated two oil and gas leases. One of these leases covering the S/2 of the Section was executed by Ham on Feb. 28, 1944. This lease contains this royalty provision:

"* * * the royalties to be paid lessor are (a) on oil * * *; (b) on gas, including casinghead gas or other gaseous substances produced from said land, and

drilled on said lease and no gas was "produced and saved from said premises", but, on the contrary, the well from which the gas in dispute comes was drilled on, the production was from, another lease, and Ham shares, and has for years, shared, in the *proceeds* thereof, because and only because of the execution by him of the communitization agreement, we are of the clear opinion that it has superseded and taken the place of the royalty provision for payment in kind invoked by Ham, and that that provision is wholly without application here. Indeed, we think it clear that in executing the pooling agreement and, as he has been doing for many years, taking his share of the proceeds thereunder, the appellee must necessarily have intended to, and in law and in fact did, abandon the provision for taking in kind as no longer in force, to exercise the option reserved to him in the lease to the NW/4 to receive in lieu of gas in kind the "1/16 of the value of all oil and gas produced and saved from the premises".

Having taken this position and having, by pooling the leases into one, obtained the benefits thereof, we think he cannot some four years later make a claim to receive in kind a ratable proportion of the gas, a claim which conflicts with his agreement to receive proceeds [7] and thus defeats the purpose and effect of the communitization agreement, which was to unitize the pool and operate the leases as though they were one, with each lessor taking the ratable part thereof to which the royalty agreed upon in his lease entitles him.

Even without the aid, of the evidence showing the construction accorded the instrument by the parties, and of the holdings of the Texas cases, that a communitization agreement effects a cross-conveyance between the owners of the several interests, so that they are all homologated into one lease to be operated as one lease, the proceeds of the gas to be accounted for to the owners in accordance with the amount of royalty reserved by each, we think it clear that appellee's claim, that the provision for taking gas in kind survived the pooling, is unsound.

When the matter is considered in the light of the undisputed facts as to the operations and settlements under the

sold or used off the premises or in the manufacture of gasoline or other product therefrom, the market value at the well of 1/8 of the gas sold or used, provided that on gas sold at the wells the royalties shall be one-eighth of the amount realized from such sale."

The other lease, covering the NE/4 of the section and containing the same royalty clause, was executed by Feltz, et al., on Aug. 4, 1937. Production of gas from the Inez well commenced in 1945, and has been continuous since that time, with the gas being transported by Phillips to centrally located gasoline tanks where the gas is processed for the gasoline or liquid content. The residue gas is delivered to interstate pipe lines under long term dedication contracts. From 1945 to 1949 the Inez was produced from and for a 480 acre unit consisting only of the S/2 and NE/4 of the section. On July 21, 1949, a consolidation agreement between the State of Texas and Phillips having been executed on May 3, 1949, the NW/4 of the section was added to the unit by an agreement, note 3 supra, communitizing the gas and gas rights of Ham and Phillips

with the 480 acre unit aforesaid, and on Oct. 7, 1949, all of Sec. 122 was designated by Phillips as a consolidated gas leasehold unit or estate. From the bringing in of the Inez well in 1945 to 1949, when the communitization agreement was executed, Phillips has at all times accounted to Ham for his entire royalty interest referable to the S/2, and from 1949 since for his entire royalty interest referable to the S/2 and the NE/4 on the basis of the market value of the gas at the well, and the tendered payments to Ham on that basis have all been accepted by Ham.

7. Sheffield v. Hogg, 124 Tex. 290, 77 S.W. 2d 1021; Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185; Magnolia Petroleum Co. v. Stroud, Tex.Civ.App., 3 S.W.2d 462; Humble Oil & Refining Co. v. Poe, Tex.Com.App., 29 S.W.2d 1019; Tidewater Associated Oil Co. v. Clemens, Tex.Civ.App., 123 S.W.2d 780, 781; Phillips Petroleum Co. v. Bynam, 5 Cir., 155 F.2d 196; Phillips Petroleum Co. v. Williams, 5 Cir., 158 F.2d 723; Dunn v. Republic National Gas Co., 5 Cir., 124 F. 2d 128.

leases and of the language of the Supreme Court of Texas in Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, 46,[8] the conclusion, that the ruling of the district judge is wrong in law and may not stand is, we think, inescapable.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

**8.** "An oil and gas lease jointly executed by the owners of two or more tracts of land owned in severalty, with provision for pooling or sharing, on the basis of acreage, the royalties from oil or gas produced anywhere on the leased land, has the effect of vesting all of the lessors, at least during the life of the lease, 'with joint ownership of the royalty earned from all the land in such block.' Veal v. Thomason, 138 Tex. 341, 349, 159 S.W. 2d 472, 476. The lease so executed is a conveyance by each lessor to each of the other lessors of an undivided interest in the royalties. Lusk v. Green, 114 Okl. 113, 245 P. 636. The joint ownership of the royalty interest in all of the land included in such lease is created by the action of the several land owners in joining in the execution of the lease. French v. George, Tex.Civ.App., 159 S.W.2d 566, 569, application for writ of error refused.

"Had Mrs. Lee, the owner of the outstanding royalty interest in the 20-acre tract, joined in the execution of the oil and gas lease, she would have become a party to the pooling agreement contained in the lease and thereby, in effect, she would have conveyed to the owner of the 42.75 acres a part of her interest in the royalty in the 20 acres and would have become the owner of an undivided interest in the royalty in the 42.75 acres. Since Mrs. Lee did not join in the lease, the execution and delivery of it by Floyd and Ector Smith would neither divest her of any part of her royalty interest in the 20-acre tract nor vest in her any interest in the royalty in the 42.75 acres. Martel v. A. Veeder Co., 199 La. 423, 6 So.2d 335."