**Boardman G. BARBY, Plaintiff,**

v.

**CABOT CORPORATION, Defendant.**

**No. CIV–80–842–D.**

United States District Court,
W.D. Oklahoma.

March 24, 1983.

Donald L. Liles, Woodward, Okl., for plaintiff.

C. Harold Thweatt and Arlen E. Fielden, Oklahoma City, Okl., for defendant.

## OPINION

DAUGHERTY, District Judge.

Plaintiff owns certain mineral interests under six producing oil and gas leases in which he is one of the lessors and the Defendant is the lessee/operator. All producing wells on the six leases are gas wells. None are oil wells. A number of the gas wells also produce condensate. The gas is delivered to gas pipe lines. After going through separators, the condensate is stored in tanks erected by the lessee and is then removed from them for marketing separate from the gas.

Plaintiff has been receiving cash royalty for the said condensate (and the gas) for several years. On March 26, 1980, Plaintiff demanded delivery in kind to him by Defendant as lessee/operator of his share of the condensate produced under all the oil and gas leases rather than further receipt of cash royalty therefor. In said demand Plaintiff did not designate a specific number of wells from which he desired to receive his share of the condensate, but during the trial Plaintiff designated 13 of a larger number of gas wells on the leases involved which produced condensate from which he wanted to receive all his share of the condensate in kind. The record is not entirely clear as to Plaintiff's willingness to install at his expense his own storage facilities for receiving and storing his share of the condensate from the 13 wells he has selected. Plaintiff did not offer or agree to provide such facilities in his said demand of March 26, 1980. At the trial, Plaintiff was of the opinion that he was entitled to use Defendant's storage facilities serving the 13 wells he designated and periodically draw his share of the condensate therefrom as the condensate was stored therein.

Plaintiff wishes to continue receiving cash royalty on his share of the natural gas production under the six oil and gas leases. Defendant rejected Plaintiff's said demand for in kind delivery of condensate under the leases involved.

Plaintiff then brought this suit in specific performance requesting an order of the Court directing Defendant in accordance with provisions in said leases to make in kind delivery to Plaintiff of his share of the condensate produced under all of said leases. Plaintiff also seeks herein damages resulting from Defendant's failure to accede to his said demand of March 26, 1980. It is Plaintiff's contention herein that condensate is oil or other liquid hydrocarbons saved at the wells and by the terms of the oil and gas leases between the parties he is entitled to in kind delivery of said condensate at the wells free of cost as demanded by his letter of March 26, 1980.

Defendant defends herein claiming: (1) Plaintiff is not entitled to delivery of condensate in kind under the terms and provisions of the contracts (oil and gas leases) between the parties, and, alternatively, (2) Plaintiff waived any right to in kind delivery of condensate by taking cash royalty therefor for many years from the start of production, (3) Plaintiff may not elect to take condensate from fewer than all wells under the leases which produce condensate, (4) Plaintiff has never agreed to provide or has provided his own facilities at his expense for the receipt and storage of his share of the condensate from the wells, (5) Plaintiff's suit for specific performance and action for damages are barred by statutes of limitations, (6) Plaintiff is barred from seeking relief herein by reason of laches, (7) Plaintiff is barred from seeking relief herein by the doctrines of res adjudicata or estoppel by judgment by the decision in *Barby v. Cabot Corporation*, 465 F.2d 11 (Tenth Cir.1972), (8) Plaintiff did not mitigate his alleged damages by purchasing condensate elsewhere, and, (9) Plaintiff waived damages by taking cash royalty for his share of the condensate after Defend-

ant rejected his demand for in kind delivery of said condensate made on March 26, 1980.

The Court has conducted a nonjury trial herein and has the benefit of several briefs filed herein by the parties.

Plaintiff's said demand for in kind delivery of condensate is based on the terms and provisions of the several contracts between the parties or the several oil and gas leases between them covering the gas wells involved. Six separate oil and gas leases between the parties have been placed in evidence before the Court.

One of the oil and gas leases between the parties, which will be identified for reference as Lease 1, provides in pertinent part as follows:

## LEASE 1

3. The royalties to be paid by Lessee are:

A. On oil, and on other liquid hydrocarbons saved at the well, one-eighth of that produced and saved from said land, same to be delivered free of cost at the wells or to the credit of Lessors in the pipeline to which the wells may be connected;

B. On gas, including casinghead gas and all gaseous substances, produced from said land and sold or used off the premises or in the manufacture of gasoline or other products therefrom, the market value at the mouth of the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; and

C. If for any period or periods of time, either during or after the primary term hereof, there is located on any Tract described in Exhibit "A" or on lands with which all or any portion of any Tract described in Exhibit "A" may be consolidated, pooled, or unitized, a gas well (and for the purposes of this clause "gas well" shall include wells capable of producing natural gas, condensate, distillate, or any gaseous substance and wells classified as gas wells by any governmental authority) ....

## LEASES 2, 3, 5 AND 6

Oil and gas Leases 2, 3, 5 and 6 between the parties, so identified for reference, each provide in pertinent part as follows:

3. The lessee shall deliver to lessor as royalty, free of cost, on the lease, or into the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

4. The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product as royalty $\frac{1}{8}$ of the market value of such gas at the mouth of the well; if said gas is sold by the lessee, then as royalty $\frac{1}{8}$ of the proceeds of the sale thereof at the mouth of the well. The lessee shall pay lessor as royalty $\frac{1}{8}$ of the proceeds from the sale of gas as such at the mouth of the well where gas only is found and where such gas is not sold or used, lessee shall pay or tender annually at the end of each yearly period during which such gas is not sold or used, as royalty, an amount equal to the delay rental provided in paragraph 5 hereof, and while said royalty is so paid or tendered this lease shall be held as a producing lease under paragraph 2 hereof; the lessor to have gas free of charge from any gas well on the leased premises for stoves and inside lights in the principal dwelling house on said land by making his own connection with the well, the use of such gas to be at the lessor's sole risk and expense.

## LEASE 4

Oil and gas Lease 4 between the parties, so identified for reference, provides in pertinent part as follows:

3. The lessee shall deliver to lessor as royalty, free of cost, on the lease, or into the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option may pay to the lessor for such one-eighth royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

4. The lessee shall monthly pay lessor as royalty on gas marketed from each well where gas only is found, one-eighth (⅛) of the proceeds if sold at the well, or if marketed by lessee off the leased premises, then one-eighth (⅛) of its market value at the well. The lessee shall pay the lessor: (a) one-eighth (⅛) of the proceeds received by the lessee from the sale of casinghead gas produced from any oil well; (b) one-eighth (⅛) of the value at the mouth of the well, computed at the prevailing market price of the casinghead gas, produced from any oil well and used by lessee off the leased premises for any purpose or used on the leased premises by the lessor for purposes other than the development and operation thereof. Lessor shall have the privilege at his own risk and expense of using gas from any gas well on said land for stoves and inside lights in the principal dwelling located on the leased premises by making his own connections thereto.

Where gas from a well or wells, capable of producing gas only, is not sold or used for a period of one year, lessee shall pay or tender as royalty, an amount equal to the delay rental as provided in paragraph (5) hereof, payable annually at the end of each year during which such gas is not sold or used, and while said royalty is so paid or tendered this lease shall be held as a producing property under paragraph numbered two hereof.

Thus, there are three different types of royalty payment provisions in the six oil and gas leases between the parties, each type employing different language. The evidence discloses that each well on the leaseholds is individually produced and accounted for to the royalty owners.

## LEASE PROVISIONS RE IN KIND DELIVERY OF CONDENSATE

The first issue for the Court to decide is whether the parties have contracted and agreed by their oil and gas leases, or any of them, that Plaintiff is entitled on demand to receive in kind delivery of condensate produced from the gas wells on the leaseholds. It is not disputed that condensate is produced only from gas wells and not oil wells,[1] and that all wells on all six leases involved herein are gas wells and not oil wells.

Generally it is Plaintiff's contention that condensate produced from the gas wells involved herein is a liquid hydrocarbon, as is oil, and he is entitled on demand to in kind delivery of his share of the condensate by and under the royalty payment clauses in the oil and gas leases which pertain to oil. To the contrary, Defendant contends that as the oil and gas leases each have separate paragraphs and provisions for the payment of royalty to lessors, one for oil

---

1. Kuntz, *The Law of Oil and Gas,* § 41.3(b) states:

The terms "distillate," "condensate," and "natural gasoline" are commonly used interchangeably to describe the liquid hydrocarbons which may be extracted from natural gas produced from a well which produces gas only and does not produce crude oil. Such substance is to be distinguished from casinghead gas.

\* \* \* \* \* \*

It has been generally recognized in the various jurisdictions with decisions on the subject that distillate (condensate) is not oil but is a component of natural gas and that title to the gas carries with it the title to all of its components.

\* \* \* \* \* \*

If the lease contains no special provision for a royalty on distillate or wet products derived from a natural gas well, the distillate will be regarded as a part of the natural gas, and the royalty provision for gas will be applied. *Gibbs v. Southern Carbon Co.,* 171 So. 587 (La.App.1937); *Humble Oil & Ref. Co. v. Poe,* 29 S.W.2d 1019 (Tex.Comm.App.1930); *Bowker v. Panhandle Eastern Pipe Line Co.,* 169 F.Supp. 713 (D.C.Kan.1959).

and one for gas, and as condensate is produced from only a gas well, that royalty payments for it fall under the gas royalty payment paragraphs and provisions and not those for oil royalty payments.

■ An examination of all the oil and gas leases involved reveals that royalty payment provisions are indeed separated generally as between oil and gas. Such examination further reveals that as to *oil* royalty, all of said leases appear to provide for either in kind delivery of the lessor's share of oil or cash royalty therefor at the option of the lessor.[2] However, none of the six leases provide as to *gas* royalty for in kind delivery of gas—only cash royalty.[3] This differentiation is not surprising. In Southwestern Legal Foundation, Tenth Annual Institute on Oil and Gas Law and Taxation, page 156, author Clayton Heare states:

A provision for the lessee to deliver to the lessor as royalty a fractional part of the gas produced has not been common. This stems from the difficulty the lessor would encounter in taking his royalty gas in kind.

As condensate is produced from only gas wells and is considered a component of natural gas with the royalty provision for gas applying in the absence of a special provision, *see* Kuntz, *supra*, footnote 1, the gas royalty payment clauses in Leases 2 through 6 which provide for only cash royalty to lessors for gas with no provision for in kind delivery of gas or condensate to lessors, Plaintiff is not entitled to in kind deliveries of condensate under any of said leases.

It thus appears that by Leases 2 through 6 the parties did not contract for in kind delivery of a lessor's share of gas and did not contract specially for condensate as a liquid hydrocarbon—they only contracted for cash royalty payments for gas and its component parts including condensate.

It is not believed therefore that Plaintiff is entitled to demand in kind delivery of the gas produced under Leases 2 through 6 or the condensate recovered with the gas. Plaintiff's demand of March 26, 1980 is therefore found to be without a complete contractual basis between the parties and is improper in demanding in kind delivery of condensate produced under Leases 2 through 6.

■ A different situation would seem to exist as to Lease 1. Though said lease does contain separate royalty payment clauses for oil and for gas, it appears that the intent of said contract (oil and gas lease) between the parties, as clearly shown by the language employed, was to provide for in kind delivery or cash royalty payments for oil and "other liquid hydrocarbons" and to provide for only cash royalty payments for gas "including casinghead gas and all gaseous substances". But see Note 2, *supra*. Condensate produced from a gas well is certainly a liquid hydrocarbon (the experts so testified herein) and would be included within such language in the royalty payment paragraph of Lease 1. Lease 1 therefore contains a special provision which includes condensate, treating it differently from gas for royalty payment purposes. Casinghead gas is produced from an oil well and is specifically by name included in the gas royalty payment

---

**2.** But see *Atwood v. Humble Oil and Refining Company*, 338 F.2d 502 (Fifth Cir.1964), *cert. denied*, 381 U.S. 926, 85 S.Ct. 1562, 14 L.Ed.2d 684 (1965), *rehearing denied*, 381 U.S. 956, 85 S.Ct. 1804, 14 L.Ed.2d 729, involving Texas law. The oil royalty payment clause in the oil and gas lease therein is like the one in Lease 1 herein except it does not contain the words, "... and on other liquid hydrocarbons ...". Also the intent of the parties as to in kind delivery of royalty oil was arrived at by the court by considering the lease and the provisions of two contemporaneous agreements between the parties, one a non-exploration agreement and the

other a loan agreement. The court concluded that it was the intent of the parties from the lease and the two contemporaneous agreements to provide for payment of royalty to the lessor only in money and not by in kind delivery. The court also found that at least prior to trial the lessors made no demand for in kind delivery of their oil royalty, nor did they tender any facilities for their taking of royalty oil in kind.

**3.** None of the royalty payment clauses, either oil or gas, treat with condensate by name.

clause in Lease 1 with gas and all gaseous substances. Thus, the parties contracted specially to put oil and other liquid hydrocarbons, which includes condensate, in one category for in kind delivery or cash royalty payments to lessors, and contracted specially to put gas, casinghead gas and all gaseous substances in another category for only cash royalty payments to lessors.

■ The Court therefore finds and concludes that the parties specially contracted for in kind delivery of condensate only in Lease 1. They did not contract for in kind delivery of condensate in Leases 2 through 6. Plaintiff's demand of March 26, 1980 ignored this contractual distinction and demanded in kind delivery of condensate under all six leases between the parties. Said demand is therefore defective, as it does not conform to all the agreements of the parties.

## WAIVER DEFENSE

■ The defense of Defendant that Plaintiff waived any right he had to in kind delivery of condensate by receiving cash royalty for the same at the start of production and for several years thereafter until Plaintiff's demand of March 26, 1980, is found to be without merit. Plaintiff's previous executions of Division Orders pertaining to the oil and gas leases are each revocable. Defendant acknowledges this in a brief. Said Division Orders being revocable at will by Plaintiff cannot amount to a waiver. They may be considered as impliedly revoked by said demand. Nothing has been presented to the Court to show that Plaintiff has done anything which would constitute a waiver or abandonment of any in kind royalty rights he may possess, such as by executing a communitization or pooling agreement which contains a provision deemed to amount to a waiver of any in kind royalty rights he might possess or supersede the same. *See Phillips Petroleum Company v. Ham*, 228 F.2d 217 (Fifth Cir.1956). In *Clark v. Slick Oil Company*, 88 Okl. 55, 211 P. 496 (1922), where the lessor had in kind royalty rights, the Oklahoma Supreme Court said:

"The fact that [the Lessor] makes a settlement for certain 'oil runs' on a different basis than that provided for in the contract does not preclude him from demanding a settlement under the terms of the written contract on any subsequent 'oil runs' that he has not already accepted settlement for. Having declined to accept further settlements on this basis and demanding of the company that the terms of the lease govern the settlement, it was the duty of the company to make settlement in accordance with the terms of the written contract."

Also *see Wolfe v. Texas Company*, 83 F.2d 425 (Tenth Cir.1936) and *Wolfe v. Prairie Oil and Gas Company*, 83 F.2d 434 (Tenth Cir.1936) and *Wolfe v. Shell Petroleum Corporation*, 83 F.2d 438 (Tenth Cir.1936), to the effect that a lessor may waive in kind delivery until he makes arrangement for the receipt and storage of his share but not beyond. A waiver or abandonment by the lessor in not taking his share is more easily found in gas in kind delivery leases in view of the long-term gas contracts prevalent in the industry and particularly when the lessee has entered into a long-term gas contract before in kind delivery is demanded.

Under the evidence herein and the applicable law, the Court finds and concludes that Plaintiff has not waived any in kind delivery rights he has as to condensate under Lease 1.

## PLAINTIFF'S ELECTION TO OBTAIN CONDENSATE FROM ONLY 13 GAS WELLS

■ No case law is presented or has been found on this specific point. Lease 1 does not prohibit this. An unfair or unreasonable selection of certain wells might be found prohibitive if the same would impose an unreasonable burden on a lessee over what the burden would be if in kind delivery were to be made from all wells. No evidence indicates such an unreasonable burden. Defendant's argument that Plaintiff may not select only certain wells to the exclusion of all is not persuasive. This

defense is deemed to be without merit under the evidence before the Court. However, Plaintiff's selection of wells is limited to those producing under Lease 1. He may not select wells producing under any of the other leases.

### FACILITIES TO RECEIVE AND STORE PLAINTIFF'S SHARE OF CONDENSATE

■ The only language found in Lease 1 pertinent to this issue is:

"A. On oil, and on other liquid hydrocarbons saved at the well, one-eighth of that produced and saved from said land, same to be delivered free of cost at the wells ..."

It is readily apparent that the parties have not specifically contracted on the point involved in this issue, nor is there any evidence of intent between the parties on this point. Case law on the point is scant. The three *Wolfe* cases, *supra,* page 413, are helpful. These related cases involve oil production with the lessor having royalty rights for in kind delivery of his share of the oil. They hold that when the lessor fails to provide storage for his part of the oil production, the lessee has the right (impliedly) to sell the lessor's share with diligence. These cases involving Oklahoma oil and gas leases are authority for the proposition that a lessor taking in kind delivery of production must provide his own storage therefor.

In the Texas case of *Atwood v. Humble Oil and Refining Company, supra,* Footnote 2, the Court noted, in denying lessors right to in kind delivery of royalty oil, that they did not tender any facilities for the taking of the oil in kind. This case indicates that if the lessors had in kind oil royalty rights they must provide their own facilities for the taking of their royalty oil in kind.

The evidence reveals that the Defendant elected to install a separator on most if not all of the gas wells producing condensate by which the condensate was separated as a liquid from the gas stream. The condensate so separated was then diverted into a storage tank erected by Defendant. All the gas wells are on continuous production.

The Court finds and concludes that Plaintiff need not install his own separator, but upon demanding in kind delivery of his share of the condensate produced, he must provide at his own expense his own facilities to receive and store his share. The *Wolfe* cases indicate that a lessor waives his right to in kind delivery of production until such time as he provides or otherwise arranges for the storage of his own share.

### LIMITATIONS

■ The Court is not aware of any evidence, argument or briefing in support of this defense asserted by Defendant. It is therefore deemed unsupported or abandoned.

### LACHES

■ Any in kind delivery rights of Plaintiff to condensate under Lease 1 are not deemed lost by the equitable doctrine of laches as urged by Defendant. The Court is not aware of any evidence which shows that Defendant has been materially prejudiced by Plaintiff's delayed assertion of his in kind delivery rights under Lease 1. See *Olansen v. Texaco, Inc.,* 587 P.2d 976, at page 985 (Okla.1978).

### RES ADJUDICATA OR ESTOPPEL BY JUDGMENT

■ A reading of the case of *Barby v. Cabot Corporation,* 465 F.2d 11 (Tenth Cir.1972), reveals that the issue decided therein is not one of the issues presented herein. This case dealt with whether the lessor-plaintiffs had been paid all the cash royalty on gas production to which they were entitled under their leases and the lessee's gas sales contract. It did not involve the issue of whether lessors were entitled upon demand to in kind delivery of condensate under the leases nor did it involve any of the other issues presented herein. Hence, these doctrines are not ap-

plicable and neither constitutes a defense in this case.[4]

## DAMAGES

■ As Plaintiff's demand of March 26, 1980 was faulty for reasons stated herein and Plaintiff was entitled to reject the same as made, the Court need not reach the issues between the parties regarding Plaintiff's claim for damages resulting from Defendant's rejection of said demand and Defendant's defenses thereto of failure to mitigate and waiver.

## CONCLUSION

For reasons stated above, Plaintiff's demand of March 26, 1980 for in kind delivery of his condensate under all six leases is found to be faulty as being a demand in excess of his contractual rights. In addition, Plaintiff is not entitled to use Defendant's condensate storage facilities, but must provide and use his own. Plaintiff did not offer to provide these facilities in his demand, has not provided same to this date and his position in this regard during these proceedings is not crystal clear. For either or both of these reasons, Defendant was entitled to reject said demand. In these circumstances, Plaintiff is not entitled in equity to a decree of specific performance or the recovery of any damages. Plaintiff's action should be dismissed without prejudice to Plaintiff, if he desires, making a proper demand for in kind delivery of condensate limited to wells under Lease 1. The Court will enter Judgment herein in accordance with the foregoing. Rule 58, Federal Rules of Civil Procedure.

**4.** The case relied on by Defendant quotes the gas royalty payment provisions of two of the oil and gas leases involved herein and three other oil and gas leases which do not appear to be involved herein. It does not quote any of the oil royalty payment provisions of any oil and gas leases. It is interesting to note that the case holds that the lessee had complete power to sell the gas produced under the leases involved subject only to the corresponding duty to pay lessees the agreed royalty on all gas marketed. It did not treat with any oil royalty payment provi-

sions in any oil and gas leases and specifically did not treat with the oil and other liquid hydrocarbons provision of Lease 1. The case does support the conclusion reached herein that in the absence of a special provision in a lease for royalty on condensate, the royalty provision in the lease for gas will be applied. But it does not construe the special provision for condensate as an "other liquid hydrocarbon" which is found in the oil royalty payment provision of Lease 1 which the Court must consider and construe in this litigation.